PORTO RICO TELEPHONE Co., Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; R. BUSCAGLIA, Treasurer of Puerto Rico, Intervener.

No. 99. Argued June 5, 1947.—Decided February 6, 1948.

*Sifre, Franceschi & Sifre,* and *Rafael Pastor* for petitioner. *Luis Negrón Fernández, Attorney General,* and *J. B. Fernández Badillo, Assistant Attorney General,* for intervener, respondent in the main proceeding.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Between March 30, 1943 and March 30, 1944, the petitioner brought certain materials to Puerto Rico for use here in its telephone business. Paragraph 20 of § 16 of the Internal Revenue Law, as amended by Act No. 25, Laws of Puerto Rico, 1942, Second and Third Special Sessions, and Act No. 116, Laws of Puerto Rico, 1943, lays a tax to be paid once only, on the sale or use in Puerto Rico of such materials. The tax is 15% of the selling price in Puerto Rico. For purposes of calculating the tax, the "selling price" is defined by § 4, as amended by Act No. 25, as the cost of the materials, plus the expenses for its transportation to the island, plus an estimated reasonable profit of 20%.[1]

The petitioner concedes that the Treasurer was entitled to collect that portion of the 15% use tax on these materials which is calculated by taking 15% of the cost of the materials plus the expenses of its transportation to Puerto Rico. But it contends that inclusion of an estimated profit of 20% in the tax base deprives the petitioner of its property without due process of law, in violation of § 2 of the Organic Act, 48 U.S.C. § 737.

---

[1] Section 4 was amended by Act No. 72, Laws of Puerto Rico, 1945, but that amendment does not affect this case.

The petitioner paid the entire tax, but filed among others a claim for refund of $19,749.91 thereof. The latter sum represents that portion of the tax which results from including, as one of the items of the tax base on which the 15% use tax is calculated, the item of 20% estimated profit. The Treasurer denied the claim for refund. The case is here on certiorari to review the decision of the Tax Court dismissing the suit of the petitioner to recover this amount.

In assailing as invalid the requirement that the tax base of the 15% use tax shall include a 20% estimated profit, the petitioner relies in part on certain state cases involving property taxes. We therefore examine first the contention of the petitioner that the tax imposed herein is a property rather than excise tax.

The petitioner concedes that paragraph 20 does not generally impose a property tax. However, it contends that as applied to these particular materials the tax is a property tax because they were introduced into Puerto Rico solely for use by the petitioner in its telephone business and have no market value here.

The argument that paragraph 20 imposes a property tax on these materials seems to us to be wholly without basis. In the first place, the Legislature itself calls this an excise tax. Title II, Act No. 85, Laws of Puerto Rico, 1925; § 4 of Act No. 85, as amended by Act No. 25 of 1942. While this label of the Legislature is not conclusive, it is entitled to great weight in the absence of language in the statute to the contrary. *Lutz* v. *Arnold*, 193 N.E. 840 (Ind., 1935); *Ingels* v. *Riley*, 53 P.(2) 939 (Calif., 1936); *Douglas Aircraft Co.* v. *Johnson*, 90 P.(2) 572 (Calif., 1939); *Head* v. *Cigarette Sales Co.*, 4 S.E.(2) 203 (Ga., 1939).

But the specific language of the statute whereby the tax is imposed is more important than the label affixed to the tax by the Legislature. The difference between property and excise taxes has been spelled out on many occasions. A

property tax is imposed on the ownership of property as such, without reference to the right or privilege to sell or use it; it recurs annually; it falls on whomever happens to be the owner of the property on a specific date; and it is a fixed percentage of the value of the property, as determined by assessment. On the other hand, an excise tax is imposed on the exercise of a privilege, such as sale or use; it occurs only once, not annually; it is not tied to any specific tax day; and it is imposed without assessment. Annotations, 103 A.L.R. 18; 129 A.L.R. 222; 153 A.L.R. 609.

It would seem clear beyond peradventure that the 15% tax imposed by paragraph 20 for the privilege of using these articles in Puerto Rico is an excise rather than a property tax. The great weight of authority characterizes such a use tax as an excise tax. *Henneford* v. *Silas Mason Co.*, 300 U.S. 577, 582, and cases cited therein; *Steward Machine Co.* v. *Davis*, 301 U.S. 548, 573; *Douglas Aircraft Co.* v. *Johnson, supra;* *Head* v. *Cigarette Sales Co., supra;* *Banner Laundering Co.* v. *Gundry*, 298 N.W. 73 (Mich., 1941); *Vancouver Oil Co.* v. *Henneford*, 49 P.(2) 14 (Wash., 1935); *National Linen Service Corp.* v. *State Tax Com'n*, 186 So. 478 (Ala., 1939); 24 Calif. L. Rev. 175; Annotations, 103 A.L.R. 18; 129 A.L.R. 222; 153 A.L.R. 609.

In *West India Oil Co.* v. *Gallardo*, 6 F.(2) 523 (C.C.A. 1st, 1925), in passing on a similar Puerto Rico statute, the Circuit Court said at pp. 525–6: "We think it plain that this is an excise tax on sale or use, and not an import tax. On analysis, the sole basis for the appellant's elaborate argument is found in the fact that most articles of personal property subject to this tax are in Porto Rico importations, because Porto Rico is in the main an agricultural or raw material producing country with few manufactures. But this economic fact does not affect the legal nature of the tax . . . Equally untenable is the contention that this is a tax on property and void for lack of uniformity. The tax is upon auto-

mobiles 'manufactures, sold or used in Porto Rico'. It is not a tax upon ownership as distinguished from the production, sale or use.'' To the same effect, *West India Oil Co.* v. *Sancho,* 108 F.(2) 144 (C.C.A. 1st, 1939), affirmed in *West India Oil Co.* v. *Domenech,* 311 U.S. 20.

Similarly, in our cases we have recognized that our sales or use tax is an excise and not a property tax, and have noted the distinction between (1) our general *ad valorem* personal property tax assessed on January 15 on the owner on that date for the coming fiscal year pursuant to § 297 of the Political Code and (2) the sales and use taxes imposed by the Internal Revenue Law without assessment and without reference to any date. *Ballester* v. *Tax Court,* 66 P.R.R. 531, 551, reversed on other grounds, 162 F.(2) 805 (C.C.A. 1st, 1947), cert. denied 332 U.S. 816; *Varcárcel* v. *Sancho, Treas.,* 61 P.R.R. 207; *West India Oil Co. (P. R.)* v. *Treasurer,* 54 P.R.R. 695, affirmed in 108 F.(2) 144 and 311 U.S. 20; *West India Oil Co. (P. R.)* v. *Benítez, City Mgr.,* 51 P.R.R. 266; *Benítez Sugar Co.* v. *Aboy, Treasurer,* 34 P.R.R. 33; *Panzardi et al.* v. *Gallardo,* 35 P.R.R. 870; *Flores Alvarez & Co.* v. *Gallardo,* 36 P.R.R. 105.

We fail to see the relevancy of the facts on which the petitioner relies; namely, that it brought these materials here, where no market allegedly exists therefor. These facts do not convert the tax on use into a property tax. The tax is still for the privilege of use here, and as such it is an excise tax.

We turn to the contention of the petitioner that the tax imposed by paragraph 20 is an *ad valorem* rather than a specific tax. Here again the cases have made clear the difference between these two types of taxes. An *ad valorem* tax consists of a fixed proportion of the value of the property; it requires the intervention of assessors to determine the value of the property; and a quasi-judicial procedure to contest the valuation fixed by the assessors is provided.

In contrast, a specific tax is a fixed sum obtained by a mathematical calculation pursuant to a formula provided by statute and requires no assessment of value. *Pingree* v. *Auditor General,* 78 N.W. 1025 (Mich., 1899); *Commonwealth* v. *A. Overholt & Co.,* 200 A. 849 (Pa., 1938); *Shivel* v. *Vidro,* 294 N.W. 78 (Mich., 1940); *Magnolia Petroleum Co.* v. *Oklahoma Tax Commission,* 106 P.(2) 829 (Okla., 1940); *Powell* v. *Maxwell,* 186 S.E. 326 (N.C., 1936).

The amount of the use tax imposed by paragraph 20 is obtained by a mere mathematical calculation without any assessment of the value of the property: the tax is 15% of the cost of the goods plus the cost of transportation plus a 20% estimated profit. It would therefore seem obvious that paragraph 20 imposes a specific and not an *ad valorem* tax. However, the petitioner relies on the last paragraph of § 4 which provides that "The term 'ad valorem,' for the purposes of this Act and of other laws in force which fix a sales tax or excise, shall be construed to mean the 'selling price' of the goods or merchandise as defined in this section."

We have already seen that while the label affixed to a statute is entitled to great weight, it is not controlling. The practical operations of a tax control over its descriptive label. *Harvester Co.* v. *Dept. of Treasury,* 322 U.S. 340, 346; *Harvester Co.* v. *Dept. of Taxation,* 322 U.S. 435, 441. We must eschew nomenclature, and look behind the label at the thing described.

We need not stop to determine why the Legislature chose to label the excise taxes imposed by the Internal Revenue Law on the sale and use of goods as *ad valorem* taxes. Although *ad valorem* is a word of art, here the Legislature used it inartistically. The label used by the Legislature does not alter the fact that it actually imposed a specific and not an *ad valorem* tax, as this tax is grounded on a simple arithmetical operation which requires no assessment of value.

The petitioner has stirred up a terminological tempest in a teapot by clinging tenaciously to the inept label affixed by the Legislature to this tax. But language means what it says, not what it is labelled. And the cases cited above demonstrate that it has always been clearly understood in this jurisdiction that the general *ad valorem* personal property tax, based on assessment, is imposed pursuant to § 297 of the Political Code once a year, whereas under the Internal Revenue Law excise taxes are laid only once without assessment on the privilege of sale or use and are calculated under a simple mathematical formula.

Inasmuch as we have concluded that the tax imposed herein is not a property tax, we need not examine the numerous state cases cited by the petitioner involving state constitutional provisions for property taxes. Likewise, as this is not an *ad valorem* tax, we find it unnecessary to explore the contention of the petitioner that as an *ad valorem* tax, the tax herein was improperly laid because it was allegedly imposed without reference to valuation.[2]

The petitioner next contends that even if this tax be considered an excise, it is invalid because it takes the property of the petitioner without due process of law. In its original brief, the only argument adduced by the petitioner in support of this contention was that there is no reasonable basis for including in the same classification an importer who introduces goods into Puerto Rico for resale and the petitioner, which brings materials here for use in its telephone business.

This argument has long since been rejected by the Supreme Court of the United States. The cases have been concerned principally with commerce clause considerations which cannot arise in this jurisdiction. *Ballester* v. *Buscaglia, supra.* But

---

[2] However, hereinafter we do examine this latter contention on the issue of constitutionality. As we shall see, the petitioner's point is that the estimated 20% profit is an arbitrary figure which has no reference to the actual facts.

some of them also hold that for due process purposes a use tax may be constitutionally imposed by a state on goods purchased outside of the state in order to complement a sales tax on goods purchased within the state. Such a use tax has two main objectives: (1) vendors within the state are enabled to compete upon terms of equality with vendors in other states; (2) the state does not lose sales tax revenue from buyers who would be tempted in the absence of a use tax to buy elsewhere to escape payment of the sales tax. *Henneford* v. *Silas Mason Co., supra,* and cases cited therein; *Southern Pac. Co.* v. *Gallagher,* 306 U.S. 167; *Pacific Tel. Co.* v. *Gallagher,* 306 U.S. 182; *Bacon & Sons* v. *Martin,* 305 U.S. 380; *General Trading Co.* v. *Tax Comm'n.,* 322 U.S. 335, and cases cited therein; *Harvester Co.* v. *Dept. of Treasury, supra;* Powell, New Light on Gross Receipts Taxes, 53 Harv. L. Rev. 909, More Ado About Gross Receipts Taxes, 60 Harv. L. Rev. 501, 710; see *P. R. Ilustrado* v. *Buscaglia,* 64 P.R.R. 870, 894–5, 901–4.

Economic equivalence is the theme that runs through a statute taxing use. A state may tax the exercise of the privilege of engaging in a transaction of sale; it may tax the different but similar privilege of use in the state after purchase elsewhere. In either case, a taxable incident or event takes place within its borders. Although competitors pay upon different activities, the tax is the same for one who purchases in the state as compared with one who purchases out of the state.

Those who buy goods elsewhere and use them in Puerto Rico enjoy our natural resources, the labor of our people and the service and protection of our government. Such merchandise should pay its way. A use tax coupled with a sales tax distributes the burden of this method of raising revenue equally between goods sold in Puerto Rico and goods purchased elsewhere for use here. In addition, there is no constitutional reason which compels the Legislature to place

local vendors at a competitive disadvantage without of state vendors.

If more be needed, the Butler Act by implication recognizes the right of Puerto Rico not only to impose a sales tax, but also to complement the latter with an equalizing use tax on goods purchased out of Puerto Rico for use here. See *Ballester* v. *Buscaglia, supra.*

In its reply brief the petitioner expands its contention that the tax imposed herein is invalid. It attacks as arbitrary and capricious the formula the Legislature has devised for ascertaining the tax base of the use tax. As we have seen, the importer must calculate the 15 per cent tax on a base which is achieved by adding three figures: (1) cost of the goods; (2) cost of transportation of the goods to Puerto Rico; (3) a 20 per cent estimated profit.

The petitioner argues that inclusion in the tax base of a 20 per cent estimated profit is invalid on the ground that it has no relation to the actual sales price in the local market. Its point is that the Legislature may not ignore the true figure involved in one of the elements of the sales price and substitute therefor by legislative fiat an arbitrary figure.

We begin by pointing out that implicit in this reasoning is the contention that the 20 per cent estimated profit is likewise arbitrary and invalid for the sales tax on sales in Puerto Rico. That is to say, this item is in the statutory formula for the use tax solely to equalize the latter with the sales tax. If we held it was arbitrary to include it in calculating the base for the use tax for the reason advanced by the petitioner, it would necessarily follow that the sales tax, although not involved in this case, suffered from the same vice.

In examining our sales tax, we find that it is imposed legally on the vendor. Unlike the situation in some states, the vendor is neither forbidden nor required to add the tax to the sales price. He is left free to do as he chooses. Under those circumstances, although a vendor will occasionally ab-

sorb some or all of the tax for competitive or other reasons, in most cases by force of economics the vendor will shift the burden of the tax to the consumer. See *Puerto Rico Ilustrado* v. *Buscaglia, supra,* p. 898, footnote 37; *National Linen Service Corp.* v. *State Tax Commission, supra.*

In searching for a formula to impose a use tax which would have the economic equivalence of such a sales tax, the Legislature was not required to shut its eyes to the reality that although the sales tax is legally on the vendor, in most instances its economic incidence falls on the vendee. The Legislature was therefore empowered to frame a use tax which equalized for extrastate sales the economic incidence of the sales tax on local sales. It is immaterial that as a practical collection device under §§ 37 and 39 of the Internal Revenue Law (as amended by Act No. 83, Laws of Puerto Rico, 1931, and Act No. 116, Laws of Puerto Rico, 1943, respectively) the importer-vendor is in most cases liable for the sales tax after introduction of the goods into Puerto Rico and prior to sale, and thereafter passes the tax on to the vendee as part of the sales price; while under § 38, as amended by Act No. 83, and under § 40 the use tax is paid directly by the vendee after introduction for use.[3] What is important is that both the sales and use taxes are in their ultimate impact consumer's taxes; and since they call for payment at the same rate on a tax base calculated pursuant to the same formula, they have precisely the same economic incidence.

With this background in mind, we turn to the objection of the petitioner that to include in the tax base for the use tax the item of 20 per cent estimated profit is arbitrary and discriminatory as applied to the specific materials involved in this case. Here the fact that the sales tax is paid by the vendor immediately after introduction and prior to

---

[3] Although they do not affect this case, see also Act No. 78, Laws of Puerto Rico, 1945, amending § 39 of the Internal Revenue Law and Act No. 58, Laws of Puerto Rico, 1945, creating a new section, § 69, of the Internal Revenue Law.

sale is important for the purpose of understanding the formula established by the Legislature for calculating the tax base of both the sales and use taxes. If the Legislature had been willing to postpone collection of the sales tax until sale to the vendee actually took place, there would have been no problem with reference to the tax base: it could have made the tax base the sales price itself. But as the Legislature wished to provide that the sales tax shall be collected prior to sale, it was necessary to make an estimate of the sales price which the vendor would ultimately place on the goods introduced by him for resale. For this purpose, the Legislature devised the formula that the sales price shall be calculated by adding to the cost of the merchandise plus the cost of its transportation a 20 per cent estimated profit. This is necessarily an estimate; the exact figure is not available because the tax is collected before the taxable event—the sale —takes place.

The Legislature categorized this 20 per cent item as estimated fair profit. This is a loose and somewhat inaccurate characterization. If it were interpreted to mean net profit, we might conceivably agree with the petitioner that it was arbitrary and capricious. But the method of calculation shows that strictly speaking it is a mark-up, and not net profit. To sell goods, a vendor has many other expenses which must be deducted from the revenue he receives from the sale of goods before he can determine his net profits. Since the 20 per cent is calculated only on the cost of the goods plus transportation, obviously this 20 per cent represents only a mark-up and not net profit.

However, even treating the 20 per cent as a mark-up and not net profit, it must be conceded that as a rigid figure it does not correspond to the actual facts in every instance. Some goods are undoubtedly sold at a mark-up higher or lower than 20 per cent of cost plus transportation. But faced as it was with the necessity of making a reasonable estimate

of the mark-up which would actually be made at some future date in order to collect the tax some time prior to the sale, the Legislature was forced to choose some figure. In the absence of any showing to the contrary, we must presume that the figure it chose approximates the actual mark-up for the average sale. Nothing has been called to our attention demonstrating that a 20 per cent mark-up is wholly without basis in most cases.

We are not intimating that the Legislature may include an arbitrary figure as one of the elements of a tax base. But exact niceties are not required in taxation. *Sánchez Morales & Co.* v. *Gallardo,* 18 F.(2) 550 (C.C.A. 1st, 1927); *Welch* v. *Henry,* 305 U.S. 134, 145; *Madden* v. *Kentucky,* 309 U.S. 83, 88. And as there is nothing before us to show that 20 per cent of the cost of goods plus the cost of transportation is not a fair approximation of the mark-up which is actually made in the average sale, we cannot hold that the provision in the statute for a 20 per cent mark-up is invalid because in some case a particular taxpayer might be able to show that his mark-up was somewhat less. Indeed, it may well be that for other taxpayers there may be a small windfall because their mark-up is slightly more than 20 per cent. This may not be the best formula the Legislature could have devised. For example, perhaps the mark-up ought to be 18 per cent or 22 per cent. But under the circumstances a rough and ready average figure which affects taxpayers in substantially the same way is not arbitrary or discriminatory.

It should also be noted that the rule of thumb embodied in the statutory formula for the tax base serves the additional purpose of eliminating the necessity for the keeping by vendors in Puerto Rico and the examination by the Treasurer of cumbersome and detailed records showing, for sales tax purposes, the actual sales prices.

*West India Oil Co.* v. *Gallardo, supra,* did not hold the contrary. There the statute provided for a similar mark-up

of 10 per cent unless it was proved to the satisfaction of the Treasurer that the actual mark-up was less than 10 per cent. The Circuit Court said at p. 526 that this provision contemplated a hearing by the Treasurer in a quasi-judicial capacity, and it pointed out that the district courts were empowered to reverse the decision of the Treasurer. But we find nothing in that case which holds or intimates that establishing an average mark-up, to be applied in all cases, is invalid.

The foregoing has been directed more to the question of the validity of the 20 per cent mark-up in connection with the sales tax than to the problem presented by the same mark-up in laying the use tax. But since the validity of the use tax as such is predicated on its economic equivalence to the sales tax, a preliminary examination of the 20 per cent mark-up as applied to the sales tax could not be avoided, despite the fact that this case involves collection of the use and not the sales tax.

Once we have concluded that the 20 per cent mark-up is valid for purposes of the sales tax, it becomes apparent that the same mark-up may be added to cost plus transportation in order to accomplish the objectives of a use tax. As we have seen, the Legislature may compel extrastate purchasers of goods for use here to assume their share of the tax burden and may protect local vendors from competitive disadvantage by imposing equivalent use taxes to complement local sales taxes. It is no answer to assert as the petitioner does here that since the importer makes no profit on materials he brings here for his own use, inclusion in the tax base of a mark-up for estimated profit is arbitrary as it bears no relation to the facts. If that argument were valid, the use tax could never be truly equivalent to the sales tax. But if the Legislature may include the mark-up in establishing a tax base for the sales tax, it must necessarily have the power to equalize the situation by making a similar provision in the use tax. The test as we have seen is whether the use tax is the same in its

economic incidence on the ultimate consumer as if the goods had been sold here and the sales tax paid thereon. Having concluded that inclusion of the 20 per cent mark-up in the tax base is valid in taxing sales here, we must necessarily hold that it is properly included in the tax base on which the use tax is calculated.[4]

By the same token, the argument of the petitioner that telephone equipment has no market value in Puerto Rico falls by the wayside. In the first place, neither the sales nor use tax is, strictly speaking, a tax on market value. The latter is what a willing buyer will pay, and a willing seller will take, at a particular time. *Mayagüez Sugar Co.* v. *Sancho, Treas.*, 64 P.R.R. 699; *Baetjer* v. *United States*, 143 F.(2) 391 (C.C.A. 1st, 1944). Here, without reference to market fluctuations, a vendor must pay a tax based on the formula set forth in § 4 which, while it roughly approximates the market price, does not account for increases or decreases in value pending sale.

But even if this difference between market value and the statutory tax base did not exist, we do not agree that the use tax, insofar as it includes in its base a 20 per cent mark-up, is invalid because no market for telephone equipment exists in Puerto Rico. Once more the test is pragmatic. Goods not sold in Puerto Rico—whether or not a market exists for

---

[4] Cf. the language found in *Fitch Co.* v. *United States*, 323 U. S. 582, 586–7: "It is argued that this conclusion results in a discrimination against a manufacturer who indulges in his own advertising and selling campaigns in favor of one whose products are advertised by his customers and that Congress could not have intended such a discrimination. But this discrimination, to the extent that it may exist, is an unavoidable consequence of an excise tax based on the wholesale selling price. Such cost factors as labor, materials and advertising naturally vary among competing manufacturers; different costs and different methods of doing business in turn may cause the wholesale selling prices to lack uniformity. And if these prices are taxed without adjustment for differing cost factors, tax inequalities and discriminations inevitably result. But where, as here, a flat tax is placed on the wholesale selling prices and no statutory provisions are made for relief from the resulting natural tax inequalities, courts are powerless to supply it themselves by imputing to Congress an unexpressed intent to achieve tax uniformity among manufacturers selling at wholesale."

them here—are taxed for the privilege of use here after purchase elsewhere at the same rate and with the same tax base as if they had been purchased here.   We see no discrimination against the petitioner in requiring it to pay taxes at the same rate calculated on the same tax base both for goods it purchases here and for goods it purchases outside of Puerto Rico for use here because they are not obtainable here.

▆ The petitioner argues that if the Legislature may arbitrarily set 20 per cent as the mark-up, it may at some future date set this figure at 200 per cent.   That is reminiscent of the argument that if a 2 per cent tax on net income is sustained, the Legislature may some day tax 100 per cent of net income. Whether a tax statute is confiscatory is a question of degree. Courts are not empowered to declare invalid a present tax, not shown to be arbitrary, because a taxpayer fears that some day the Legislature may enact the same tax at a figure that is truly arbitrary.   *Ballester* v. *Court of Tax Appeals,* 61 P.R.R. 460, 488–93, affirmed in 142 F.(2) 11 (C.C.A. 1st, 1944), cert. denied, 323 U. S. 793.

The decision of the Tax Court will be affirmed.

Mr. Justice Marrero did not participate herein.