YATES, Judge.
The Alabama Department of Revenue (Department) assessed use taxes, along with penalties and interest, against Fleming Foods of Alabama, Incorporated (Fleming Foods). Following a ruling by an administrative law judge in favor of the Department, Fleming Foods appealed the assessment to the Circuit Court of Geneva County (trial court). The trial court found that the assessment as to certain vehicles operated by Fleming Foods was legally and constitutionally assessed, that the assessment was correct, and it directed the Department to finalize the assessment. After its motion for new trial was denied, Fleming Foods appealed.
On appeal, Fleming Foods states its issue as follows: “Under the laws of Alabama and the Commerce Clause of the U.S. Constitution, may [the Department] impose a use tax on [Fleming Foods] for the use ... of trucks and trailers which are instrumentalities of interstate commerce and have been and are continuously in use in interstate commerce.”
In stating applicable standards for our review, we first note that Ala.Code 1975, § 40-2-22, pertaining to appeals from final assessments made by the Department, has been repealed by Act No. 92-186, Ala. Acts 1992, and, along with several other code sections, has been replaced by the “Alabama Taxpayers’ Bill of Rights and Uniform Revenue Procedures Act,” Ala.Code 1975, § 40-2A-1 et seq. Section 83 of Act No. 92-186 provides, in most cases, an effective date of October 1, 1992. Based on the facts here, this court is of the opinion that, despite being repealed by Act No. 92-186, the provisions of § 40-2-22 still apply to this particular case. See Bryson v. Central Electric Co., 402 So.2d 922 (Ala.1981); Cf. Wilkinson v. State ex rel. Morgan, 396 So.2d 86 (Ala.1981) (where express repeal of statute operated to dissolve injunction entered pursuant to repealed statute, due to “continuing” nature of injunctions). As such, the assessment made by the Department shall be considered correct pri-ma facie, and the taxpayer, here Fleming Foods, has the burden of proving that the assessment is incorrect. Ala.Code 1975, § 40-2-22.
Also, we acknowledge the well-known rule of construction concerning exemption statutes in taxation:
*572 “ ‘[Exemptions from taxation, whether statutory or constitutional, are to be strictly construed, against the exemption and in favor of the right to tax, and ... no person or property is to be exempted unless the intention to exempt such person or property clearly appears in some statute or constitutional provision.’ Furthermore, it has long been the rule that one seeking an exemption from taxation assumes the burden to clearly establish the right, and that in all cases of doubt as to legislative intention, the presumption is in favor of the taxing power.”
Community Action Agency of Huntsville, Madison County, Inc. v. State, 406 So.2d 890, 893-94 (Ala.1981) (citations omitted).
The parties in this ease entered a joint stipulation of facts which stated, in pertinent part, the following:
“1. [Fleming Foods], an Alabama corporation, is a wholly owned subsidiary of Fleming Companies, Inc., an Oklahoma corporation.
“2. The State of Alabama and the City of Geneva have assessed use taxes in the principal amounts of $13,753.61 and $4,584.54 respectively against certain vehicles in question in the possession of Fleming Foods ... for the period of July 1, 1981 through June 30, 1984. Those vehicles in question are:
“(a) [Omitted]
“(b) Eight 1983 and 1984 Polar American trailers;
“(c) Thirteen 1983 and 1984 Peterbilt trucks.
“3. Fleming Foods ... acquired the use of the vehicles which were purchased through the parent corporation, Fleming Companies, Inc.
“4. The tractors and trailers are titled and registered in the State of Utah in the name of Fleming Companies, Inc. under the provisions of the International Registration Plan.
“5. The amount of registration fees payable to the State of Alabama pursuant to the IRP has not been affected by the titling and base registration of the vehicles in Utah rather than Alabama. All registration fees due to the State of Alabama on account of the vehicles have been paid.
“6. Fleming Foods ... derived revenue during the period in question from:
“(a) the distribution of wholesale groceries from Fleming Companies, Inc., warehouses to various retail grocery stores located in [various southeastern and southwestern states, including Alabama].
“(b) the transportation of commodities from various locations in the above-referenced states to Fleming Companies, Inc.’s wholesale distribution centers as a compensated intercorporate hauler within ICC guidelines and authority therefor.
“(e) the transportation of various commodities between non-Fleming entities in the above-referenced states as a[n] ICC common carrier.
“(d) the wholesale brokering of transportation services for commodities which: (1) do not belong to Fleming Companies, Inc. and which are transported by Fleming Companies, Inc., or (2) which belong to Fleming Companies, Inc., but which are transported by unrelated entities.
“7. The vehicles in question were manufactured and purchased outside of the State of Alabama.
“8. In 1984, the fleet of vehicles comprising Fleming Foods ... travelled a total of 6,143,530 miles logging 2,341,153 of those miles in the State of Alabama; as such 38% of Fleming Foods total miles were logged in the State of Alabama....
“9. The 1983 and 1984 Polar American trailers were manufactured in Texas. Fleming Companies, Inc. took possession of the trailers in Oklahoma City, Oklahoma whereupon they were inspected by Fleming Companies, Inc. employees, custom modified for the company’s use, and delivered to Fleming Foods ... in Oklahoma City, Oklahoma.
“10. Before the 1983 and 1984 Polar American trailers first entered the State of Alabama, they had been used to haul commodities in interstate commerce. When they first entered the [S]tate of Alabama they were under load with commodities being transported into and through the *573 state in the course of interstate commerce. The trailers since have been used continuously in interstate commerce in the above described fashion.
“11. [Omitted]
“12. Although the trailers are most frequently dispatched from the Geneva, Alabama facility of Fleming Foods ..., they frequently are dropped at other Fleming Companies, Inc. facilities in other states. When the trailers are at those facilities, they are used by Fleming Companies, Inc. or its subsidiaries for transportation not related to the specific uses of Fleming Foods.... This is referred to within the company as ‘swapping out.’
“13. Fleming Foods ... may not sell or otherwise dispose of the vehicles without the approval of Fleming Companies, Inc.
“14. The 1983 and 1984 Peterbilt trucks were ordered by employees of Fleming Companies, Inc. in Oklahoma City, Oklahoma and were manufactured in Texas., Prior to the purchase and delivery of the initial shipment of the new model trucks, an inspection was conducted by employees of Fleming Companies, Inc. in Texas. After the purchase of the trucks was approved by Fleming Companies, Inc., they were transported FOB Denton, Texas to Geneva, Alabama.
“15. When the 1983 and 1984 Peterbilt trucks first entered the State of Alabama they were not under load but were not operated until they were placed in the Fleming Companies, Inc. fleet and began operating in the above-referenced states. The vehicles since have been used continuously in interstate commerce as herein-above described.
“16. Since the time all the vehicles in question entered the State of Alabama they have been used continuously in interstate commerce in the conduct of the business of Fleming Companies, Inc. and Fleming Foods ... in the above-referenced manner.”
In imposing the tax in question, the Department relies on Ala.Code 1975, § 40-23-61(c), which states as follows:
“An excise tax is hereby imposed on the storage, use or other consumption in this
state of any automotive vehicle or truck trailer, semitrailer or house trailer purchased at retail on or after October 1, 1965, for storage, use or other consumption in this state at the rate of one and one-half percent of the sales price of such automotive vehicle, truck trailer, semitrailer or house trailer.”
An exemption for such tax exists, however, pursuant to Ala.Code 1975, § 40-23-62, as follows:
“The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article:
[[Image here]]
“(2) Property, the storage, use or other consumption of which this state is prohibited from taxing under the Constitution or laws of the United States of America or under the Constitution of this state.”
First, Fleming Foods essentially contends that the Alabama Legislature, in enacting the predecessors to the use tax provisions utilized here by the Department, did not intend for vehicles in interstate commerce to be assessed a use tax, unless and until those vehicles came to rest within the state to create a “taxable moment.” Fleming Foods constructs its contention from an analysis of § 40-23-62(2), and from an analysis of several decisions of the Supreme Court of the United States and of the Alabama Supreme Court. As a result, Fleming Foods argues that its vehicles in question in this case are exempted from Alabama’s use tax because, according to Fleming Foods, those vehicles are “instrumentalities of interstate commerce for which there has been no local ‘taxable moment’ separate from the flow of interstate commerce.” Stated differently, Fleming Foods argues that the imposition of the us.e tax in this instance would be a violation of the Commerce Clause, U.S. Const, art. I,. § 8, el. 3, since, according to Fleming Foods, its vehicles never were removed from the flow of interstate commerce. Accordingly, Fleming Foods claims the exemption stated in § 40-23-62(2).
*574 As argued by Fleming Foods in its brief, the application of a state tax statute, when considered in light of the Commerce Clause, is based on a determination of the legislature’s intention at the time of enactment of that statute, despite more recent decisions of the Supreme Court of the United States enlarging an area of state taxation. Ex parte Dixie Tool & Die Co., 537 So.2d 923 (Ala.1988); See also, Siegelman v. Chase Manhattan Bank (USA), National Association, 575 So.2d 1041 (Ala.1991) (intention of legislature at time of enactment of statute is key question).
“‘[These] recent pronouncements of the United States Supreme Court which enlarge the permissible area of state taxation cannot change the intent or enlarge the scope of enactments passed by our Legislature. Therefore, the question is not whether the State may, under prevailing caselaw, impose a tax upon the gross receipts earned from those transactions. Rather, the controlling issue is whether, in originally enacting this statute, the Legislature intended to tax these transactions. To determine that intent, we must look to the nature of the activity involved as well as the ‘history of the times’ when the statute was enacted.’”
Dixie Tool, supra, at 925 (emphasis in original) (citation omitted).
The predecessors to § 40-23-61 and § 40-23-62(2) were approved originally on February 28,1939, by Act No. 67, Ala.Acts 1939, in §§ 11(b) and 111(b), respectively. These provisions then were codified in Code 1940, tit. 51, § 788(b) and § 789(b), respectively. Since the original enactment, changes to the use tax have come, for the most part, only as to the applicable tax rate and as to the types of vehicles involved. There have been no changes to the exemption provision upon which Fleming Foods relies.
To determine the intent of the Alabama Legislature in enacting the use tax, we turn to a discussion of then-current case law. In State of Minnesota, v. Blasius, 290 U.S. 1, 54 S.Ct. 34, 78 L.Ed. 131 (1933), the Supreme Court of the United States stated the following:
“[T]he states may not tax property in transit in interstate commerce. But, by reason of a break in the transit, the property may come to rest within a state and become subject to the power of the state to impose a non-discriminatory property tax. Such an exertion of state power belongs to that class of cases in which, by virtue of the nature and importance of local concerns, the state may act until Congress, if it has paramount authority over the subject, substitutes its own regulation. The ‘crucial question,’ in determining whether the state’s taxing power may thus be exerted, is that of ‘continuity of transit.’
“If the interstate movement has not begun, the mere fact that such a movement is contemplated does not withdraw the property from the state’s power to tax it. If the interstate movement has begun, it may be regarded as continuing, so as to maintain the immunity of the property from state taxation, despite temporary interruptions due to the necessities of the journey or for the purpose of safety and convenience in the course of the movement.”
Id. at 9-10, 54 S.Ct. at 37 (citations omitted).
Later, in Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937), the Supreme Court stated that “[tjhings acquired or transported in interstate commerce may be subjected to a property tax ... when they have become part of the common mass of property within the state of destination.... For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use_” Id. at 582, 57 S.Ct. at 526 (citations omitted).
Also, less than one month prior to the enactment of Alabama’s original use tax provisions, the Supreme Court discussed the “taxable moment” principle, as follows:
“The principle illustrated by the Helson Case forbids a tax upon commerce or consumption in commerce. The Wallace Case, and precedents analogous to it, permit state taxation of events preliminary to interstate commerce. The validity of any application of a taxing act depends upon a classification of the facts in the light of these theories.... If articles so handled *575 are deemed to have reached the end of their interstate transit upon ‘use or storage,’ no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use ... was effective. The interstate movement was complete. The interstate consumption had not begun.”
Southern Pac. Co. v. Gallagher, 306 U.S. 167, 176-77, 59 S.Ct. 389, 393, 83 L.Ed. 586 (1939).
In considering these cases, certain presumptions concerning legislative intent are applicable. As noted in Siegelman, supra, we presume that our legislature, at the time of enactment of the use tax provisions, was aware of pertinent case law. Also, we presume that the legislature was aware of limits on the state’s taxing power. Id.
In its brief, Fleming Foods places great reliance on the fact that the original exemption provision remains unchanged. According to Fleming Foods, “[bjecause the exemption contained in § 40-23-62(2) has remained unchanged from its original enactment, the established rule in Alabama is that the exemption applies today in the same manner that it did when enacted in 1939.” Such reliance is misplaced, however.
A literal reading of the exemption provision clearly shows that the exemption applies to property which the state “is prohibited from taxing under the constitution or laws of the United States of America or under the constitution of this state.” Act No. 67, Ala. Acts 1939 (emphasis added). We note that the language does not limit the exemption to property for which there has been no “taxable moment,” nor does it limit the exemption to other situations similar to those in the United States Supreme Court decisions quoted earlier. Our determination of the legislative intent surrounding the exemption provision is that the legislature worded the provision to allow for possible changes in prevailing law concerning the relationship of state tax statutes to, among other things, the Commerce Clause. In other words, the exemption provision, enacted shortly after the cases of Blasius, supra, Henneford, supra, and Southern Pac., supra, were decided, nevertheless retains flexibility in its wording, so as to provide an exemption from taxation when the laws of the United States or of Alabama so provide. Again we note the presumption that our legislature was aware of these recent U.S. Supreme Court cases, Siegelman, supra; yet our legislature chose to word the exemption provision in a manner not solely restricted to “taxable moments.” As such, the fact that its wording remains unchanged is of no consequence. Therefore, § 40-23-62(2) does not bar automatically the imposition of a use tax on the vehicles of Fleming Foods.
As acknowledged by the Supreme Court in Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), prior Supreme Court decisions
“have considered not the formal language of the tax statute but rather its practical effect, and have sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.”
Id. at 279, 97 S.Ct. at 1079.
As noted by the Department in its brief, the components of this four-pronged test did not originate from Complete Auto Transit, supra, but simply were consolidated in that ease to form its analysis. In fact, one case cited in Complete Auto Transit, supra, predated the original enactment of Alabama’s use tax provisions and stated the following:
“It was not the purpose of the commerce clause to reheve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. ‘Even interstate business must pay its way,’ and the bare fact that one is carrying on interstate commerce does not reheve him from many forms of state taxation which add to *576 the cost of his business- [I]f the property devoted to interstate transportation is used both within and without the state, a tax fairly apportioned to its use within the state will be sustained.”
Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254-55, 58 S.Ct. 546, 548, 82 L.Ed. 823 (1938) (citations omitted). It is the four-pronged test of Complete Auto Transit, supra, which must be applied to the facts of this case.
In its brief, Fleming Foods concedes that its business activities have a substantial nexus with the State of Alabama. Fleming Foods argues, however, that the remaining prongs of the Complete Auto Transit, supra, test are not met.
In elaborating on the second prong of Complete Auto Transit, supra, the Supreme Court of the United States stated the following:
“[W]e are mindful that the central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction. ... [W]e determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent.
“To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute....
[[Image here]]
“The external consistency test asks whether the State has taxed only that portion of the revenues from the interstate activity which reasonably reflects the instate component of the activity being taxed. We thus examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity.
[[Image here]]
“It should not be overlooked, moreover, that the external consistency test is essentially a practical inquiry. In previous cases we have endorsed apportionment formulas based upon the miles a bus, train, or truck traveled within the taxing State.”
Goldberg v. Sweet, 488 U.S. 252, 260-62, 264, 109 S.Ct. 582, 588-89, 590, 102 L.Ed.2d 607 (1989) (emphasis added) (citations omitted).
Based upon the foregoing and based upon the stipulations of the parties, we hold that the use tax assessment, as applied to Fleming Foods’ vehicles in this case, fads both the internal and external consistency tests of the second, or apportionment, prong of Complete Auto Transit, supra. In paragraph 8 of the parties’ stipulations, the parties agree that, in 1984, Fleming Foods’ fleet of vehicles trav-elled only 38% of its mileage within the state of Alabama. The record reflects no apportionment of the use taxes assessed by the Department for the period in question, however. Accordingly, the Department’s assessment is not internally consistent since, if every state imposed an identical tax against Fleming Foods, multiple taxation would result. Goldberg, supra. Also, the assessment fails the external consistency test, in that the Department’s assessment, at least for the year 1984, does not “reasonably reflect[ ] the in-state component of the activity being taxed.” Id. at 262, 109 S.Ct. at 589.
For completeness, we briefly address the third and fourth prongs of Complete Auto Transit, supra. For basically the same reasons noted in our evaluation of the second prong of Complete Auto Transit, supra, we also hold' that the Department’s assessment fails the third prong; i.e., the assessment discriminates against interstate commerce. See, American Trucking Associations, Inc. v. Scheiner, 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987) (holding that Pennsylvania’s flat taxes discriminated against interstate commerce, because those taxes disproportionately burdened interstate trucks which travelled fewer miles per year on that state’s highways). Concerning the fourth prong of Complete Auto Transit, supra, we hold that the Department’s assessment is fairly related to governmental services provided by the State of Alabama. See Goldberg, supra.
Since the Department’s assessment of use taxes against Fleming Foods fails the test of *577 Complete Auto Transit, supra, the trial court’s judgment as to the correctness of that assessment is due to be reversed and the cause remanded. On remand, the circuit court is instructed to direct the Department of Revenue to reassess the use taxes in an apportioned amount, according to the facts of this case and according to applicable ease law.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.