HENNEFORD ET AL. *v.* SILAS MASON CO., INC.
ET AL.

No. 418.   Argued December 14, 15, 1936.   Reargued March 1, 2,
1937.—Decided March 29, 1937.

*Mr. R. G. Sharpe,* Assistant Attorney General of Washington, with whom *Mr. G. W. Hamilton,* Attorney General, was on the brief, for appellants.

*Mr. B. H. Kizer,* with whom *Mr. W. G. Graves* was on the brief, for appellees.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

A statute of Washington taxing the use of chattels in that state is assailed in this suit as a violation of the commerce clause (Constitution of the United States, Article I, § 8) in so far as the tax is applicable to chattels purchased in another state and used in Washington thereafter.

Plaintiffs (appellees in this court) are engaged either as contractors or as subcontractors in the construction of the Grand Coulee Dam on the Columbia River. In the performance of that work they have brought into the state of Washington machinery, materials and supplies, such as locomotives, cars, conveyors, pumps, and trestle steel, which were bought at retail in other states. The cost of all the articles with transportation expenses added was $921,189.34. Defendants, the Tax Commission of Washington (appellants in this court) gave notice that plaintiffs had become subject through the use of this property to a tax of $18,423.78, two per cent of the cost, and made demand for payment. A District Court of three judges, organized in accordance with § 266 of the Judicial Code (28 U. S. C. § 380), adjudged the statute void upon its face, and granted an interlocutory injunction, one judge dissenting. 15 F. Supp. 958. The case is here upon appeal. 28 U. S. C. § 380.

Chapter 180 of the Laws of Washington for the year 1935, consisting of twenty titles, lays a multitude of excise taxes on occupations and activities. Only two of these taxes are important for the purposes of the case at hand, the "tax on retail sales," imposed by Title III, and the "compensating tax," imposed by Title IV on the privilege of use. Title III provides that after May 1, 1935, every retail sale in Washington, with a few enumerated exceptions,[1] shall be subject to a tax of 2% of

---

[1] "Sec. 19. The tax hereby levied shall not apply to the following sales:

"(a) Casual and isolated sales by a person who is not engaged in the business of selling tangible personal property at retail;

"(b) Sales made by persons in the course of business activities with respect to which tax liability is specifically imposed under title V of this act, when the gross proceeds from such sales must be included in the measure of the tax imposed under said title V;

"(c) The distribution and news stand sale of newspapers;

the selling price. Title IV, with the heading "compensating tax," provides (§§ 31, 35) that there shall be collected from every person in the state "a tax or excise for the privilege of using within this state any article of tangible personal property purchased subsequent to April 30, 1935," at the rate of 2% of the purchase price, including in such price the cost of transportation from the place where the article was purchased. If those provisions stood alone, they would mean that retail buyers within the state would have to pay a double tax, 2% upon the sale and 2% upon the use. Relief from such a burden is provided in another section (§ 32) which qualifies the use tax by allowing four exceptions. Only two of these exceptions (b and c) call for mention at this time.[2] Subdivision (b) provides that the use tax shall not be laid unless the property has been bought at retail. Subdivision (c) provides that the tax shall not

"(d) Sales which the State of Washington is prohibited from taxing under the constitution of this state or the constitution or laws of the United States;

"(e) Sales of motor vehicle fuel taxable under chapter 58 of the Laws of 1933, section 5 (being Rem. Rev. Stat., section 8327–5);

"(f) Sales made on relief vouchers issued by the department of public welfare or by any county or city or other welfare agency;

"(g) Sales of fresh sweet milk, raw unprocessed fruits and vegetables, butter, eggs, cheese, canned milk and unsweetened bread in loaf form (including rolls and buns), sold for consumption off the premises."

[2] For greater certainty exceptions (a) and (d) are stated in this note:

"The provisions of this title shall not apply:

"(a) In respect to the use of any article of tangible personal property brought into the State of Washington by a non-resident thereof for his or her use or enjoyment while within the state;

"(d) In respect to the use of tangible personal property purchased during any calendar month, the total purchase price of which is less than twenty ($20.00) dollars."

apply to the "use of any article of tangible personal property the sale or use of which has already been subjected to a tax equal to or in excess of that imposed by this title whether under the laws of this state or of some other state of the United States." If the rate of such other tax is less than 2%, the exemption is not to be complete (§ 33), but in such circumstances the rate is to be measured by the difference.

The plan embodied in these provisions is neither hidden nor uncertain. A use tax is never payable where the user has acquired property by retail purchase in the state of Washington, except in the rare instances in which retail purchases in Washington are not subjected to a sales tax. On the other hand, a use tax is always payable where the user has acquired property by retail purchase in or from another state, unless he has paid a sales or use tax elsewhere before bringing it to Washington. The tax presupposes everywhere a retail purchase by the user before the time of use. If he has manufactured the chattel for himself, or has received it from the manufacturer as a legacy or gift, he is exempt from the use tax, whether title was acquired in Washington or elsewhere. The practical effect of a system thus conditioned is readily perceived. One of its effects must be that retail sellers in Washington will be helped to compete upon terms of equality with retail dealers in other states who are exempt from a sales tax or any corresponding burden. Another effect, or at least another tendency, must be to avoid the likelihood of a drain upon the revenues of the state, buyers being no longer tempted to place their orders in other states in the effort to escape payment of the tax on local sales. Do these consequences which must have been foreseen, necessitate a holding that the tax upon the use is either a tax upon the operations of interstate commerce or a discrimination against such commerce obstructing or burdening it unlawfully?

1. The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

Things acquired or transported in interstate commerce may be subjected to a property tax, non-discriminatory in its operation, when they have become part of the common mass of property within the state of destination. *Wiloil Corp.* v. *Pennsylvania,* 294 U. S. 169, 175; *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 453; *Brown-Forman Co.* v. *Kentucky,* 217 U. S. 563, 575; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 500, 519; *Woodruff* v. *Parham,* 8 Wall. 123, 137. This is so, indeed, though they are still in the original packages. *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506; *American Steel & Wire Co.* v. *Speed, supra; Woodruff* v. *Parham, supra.* For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. *Nashville, C. & St. L. Ry. Co.* v. *Wallace,* 288 U. S. 249, 267; *Edelman* v. *Boeing Air Transport, Inc.,* 289 U. S. 249, 252; *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, 93. The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership. *Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra; Bromley* v. *McCaughn,* 280 U. S. 124, 136–138; *Burnet* v. *Wells,* 289 U. S. 670, 678. A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively. *Ibid.* Calling the tax an excise when it is laid solely upon the use (*Vancouver Oil Co.* v. *Henneford,* 183 Wash. 317; 49 P. (2d) 14) does not make the power to impose it less, for anything the commerce clause has to say of its validity, than calling it a property tax and laying it on ownership. "A nondiscriminatory tax upon local sales . . . has never been regarded as imposing a direct burden upon interstate commerce and has no greater or different effect upon that commerce than a general property tax to which all those enjoying the protection of the

State may be subjected." *Eastern Air Transport, Inc.* v. *South Carolina Tax Comm'n,* 285 U. S. 147, 153. A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate. *Nashville, C. & St. L. Ry. Co.* v. *Wallace, supra; Edelman* v. *Boeing Air Transport, Inc., supra; Monamotor Oil Co.* v. *Johnson, supra.* Cf. *Vancouver Oil Co.* v. *Henneford, supra.*

The case before us does not call for approval or disapproval of the definition of use or enjoyment in the rules of the Commission. Those rules inform us that "property is put to use by the first act after delivery is completed within the state by which the article purchased is actually used or is made available for use with intent actually to use the same within the state. The term 'made available for use' means and includes the exercise of any right or power over tangible personal property preparatory to actual use within the state, such as keeping, storing, withdrawing from storage, moving, installing or performing any act by which dominion or control over the property is assumed by the purchaser." A tax upon a use so closely connected with delivery as to be in substance a part thereof might be subject to the same objections that would be applicable to a tax upon the sale itself. If the rules are too drastic in that respect or others, the defect is unimportant in relation to this case. Here the machinery and other chattels subjected to the tax have had continuous use in Washington long after the time when delivery was over. The plaintiffs are not the champions of any rights except their own.

2. The tax upon the use after the property is at rest is not so measured or conditioned as to hamper the transactions of interstate commerce or discriminate against them.

Equality is the theme that runs through all the sections of the statute. There shall be a tax upon the use, but sub-

ject to an offset if another use or sales tax has been paid for the same thing. This is true where the offsetting tax became payable to Washington by reason of purchase or use within the state. It is true in exactly the same measure where the offsetting tax has been paid to another state by reason of use or purchase there. No one who uses property in Washington after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent that he has paid a use or sales tax somewhere. Every one who has paid a use or sales tax anywhere, or, more accurately, in any state, is to that extent to be exempt from the payment of another tax in Washington.

When the account is made up, the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed. Equality exists when the chattel subjected to the use tax is bought in another state and then carried into Washington. It exists when the imported chattel is shipped from the state of origin under an order received directly from the state of destination. In each situation the burden borne by the owner is balanced by an equal burden where the sale is strictly local. "There is no demand in . . . [the] Constitution that the State shall put its requirements in any one statute. It may distribute them as it sees fit, if the result, taken in its totality, is within the State's constitutional power." *Gregg Dyeing Co.* v. *Query*, 286 U. S. 472, 480. If the sales tax were abolished, the buyer in Washington would pay at once upon the use. He would have no longer an offsetting credit. While the sales tax is in force, he pays upon the sale, and pays at the same rate. For the owner who uses after buying from afar the effect is all one whether his competitor is taxable under one title or another. This common sense conclusion has ample precedent behind it. Alabama laid a tax on

the sale of spirituous liquors, the products of sister states. Comparing the tax with others applicable to domestic products, the court upheld the statute. The methods of collection were different, but the taxes were complementary and were intended to effect equality. *Hinson* v. *Lott*, 8 Wall. 148. Louisiana laid a tax in lieu of local taxes on rolling stock operated within the state, but belonging to corporations domiciled elsewhere. The court compared the tax with the local taxes upon residents, and found discrimination lacking. *General American Tank Car Corp.* v. *Day,* 270 U. S. 367, 372, 373. South Carolina laid a tax on the storage of gasoline brought from other states and held for use in local business. The statute was interpreted by the state court as covering "all gasoline stored for use and consumption upon which a like tax has not been paid under other statutes." Upon comparison of all the statutes, the impost was upheld. The taxpayers had "failed to show that whatever distinction there existed in form, there was any substantial discrimination in fact." *Gregg Dyeing Co.* v. *Query, supra.*

Baldwin v. *G. A. F. Seelig, Inc.,* 294 U. S. 511, is invoked by appellees as decisive of the controversy, but the case is far apart from this one. There a statute of New York had made provision for a minimum price to be paid by dealers in milk to producers in that state. Cf. *Nebbia* v. *New York,* 291 U. S. 502; *Hegeman Farms Corp.* v. *Baldwin,* 293 U. S. 163. The same statute provided that when milk from another state had been brought into New York, the dealer should be prohibited from selling it at any price unless in buying the milk from the out-of-state producer he had paid the price that would be necessary if he had bought within the state. New York was attempting to project its legislation within the borders of another state by regulating the price to be paid in that state for milk acquired there. She said in effect to farmers in Vermont: your milk cannot be sold by dealers to whom you ship it in

New York unless you sell it to them in Vermont at a price determined here. What Washington is saying to sellers beyond her borders is something very different. In substance what she says is this: You may ship your goods in such amounts and at such prices as you please, but the goods when used in Washington after the transit is completed, will share an equal burden with goods that have been purchased here.

We are told that a tax upon the use, even though not unlawful by force of its effects alone, is vitiated by the motives that led to its adoption. These motives cause it to be stigmatized as equivalent to a protective tariff. But motives alone will seldom, if ever, invalidate a tax that apart from its motives would be recognized as lawful. *Magnano Co.* v. *Hamilton,* 292 U. S. 40, 44; *Fox* v. *Standard Oil Co.,* 294 U. S. 87, 100, 101. Least of all will they be permitted to accomplish that result when equality and not preference is the end to be achieved. Catch words and labels, such as the words "protective tariff," are subject to the dangers that lurk in metaphors and symbols, and must be watched with circumspection lest they put us off our guard. A tariff, whether protective or for revenue, burdens the very act of importation, and if laid by a state upon its commerce with another is equally unlawful whether protection or revenue is the motive back of it. But a tax upon use, or, what is equivalent for present purposes, a tax upon property after importation is over, is not a clog upon the process of importation at all, any more than a tax upon the income or profits of a business. The contention would be futile that Washington in laying an ownership tax would be doing a wrong to non-residents in allowing a credit for a sales tax already borne by the owner as a result of the same ownership. To contend this would be to deny that a state may develop its scheme of taxation in such a way as to rid its exactions of unnecessary oppression. In the statute in dispute such a scheme has

been developed with sedulous regard for every interest affected. Yet a word of caution should be added here to avoid the chance of misconception. We have not meant to imply by anything said in this opinion that allowance of a credit for other taxes paid to Washington made it mandatory that there should be a like allowance for taxes paid to other states. A state, for many purposes, is to be reckoned as a self-contained unit, which may frame its own system of burdens and exemptions without heeding systems elsewhere. If there are limits to that power, there is no need to mark them now. It will be time enough to mark them when a taxpayer paying in the state of origin is compelled to pay again in the state of destination. This statute by its framework avoids that possibility. The offsetting allowance has been conceded, whether the concession was necessary or not, and thus the system has been divested of any semblance of inequality or prejudice. A taxing act is not invalid because its exemptions are more generous than the state would have been free to make them by exerting the full measure of her power.

Finally, there is argument that the tax now in question, though in form upon the use, was in fact upon the foreign sale, and not upon the use at all, the form being a subterfuge. The supposed basis for that argument is a reading of the statute whereby the use shall not be taxable if the chattel was manufactured by the user or received as a legacy or acquired in any way except through the medium of purchase, and a retail one at that. But the fact that the legislature has chosen to lay a tax upon the use of chattels that have been bought does not make the tax upon the use a tax upon the sale. One could argue with as much reason that there would be a tax upon the sale if a property tax were limited to chattels so acquired. A legislature has a wide range of choice in classifying and limiting the subjects of taxation. *Bell's Gap R. Co.* v.

*Pennsylvania*, 134 U. S. 232, 237; *Ohio Oil Co.* v. *Conway*, 281 U. S. 146, 159. The choice is as broad where the tax is laid upon one or a few of the attributes of ownership as when laid upon them all. *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 158, 159. True, collections might be larger if the use were not dependent upon a prior purchase by the user. On the other hand, economy in administration or a fairer distribution of social benefits and burdens may have been promoted when the lines were drawn as they were. Such questions of fiscal policy will not be answered by a court. The legislature might make the tax base as broad or as narrow as it pleased.

The interlocutory injunction was erroneously granted, and the decree must be

*Reversed.*

MR. JUSTICE McREYNOLDS and MR. JUSTICE BUTLER dissent.