MANAGEMENT SERVICES, INC., Respondent,

v.

James R. SPRADLING, Director of Revenue, State of Missouri, Appellant.

No. 59470.

Supreme Court of Missouri, en banc.

March 14, 1977.

S. Joel Wilson, Asst. Atty. Gen., Jefferson City, for appellant.

William H. Sanders and Jack F. Olson, Kansas City, for respondent.

DONNELLY, Judge.

This appeal involves the construction of the Missouri Compensating Use Tax Law, § 144.600, et seq., RSMo 1969. This Court has jurisdiction of the cause pursuant to Article V, § 3, Mo.Const., because it involves the construction of a revenue law of the state.

Respondent, Management Services, Inc., is the owner of all issued and outstanding capital stock of several insurance companies, all of which are headquartered in Kansas City, Missouri. Management Services furnishes the administrative officers and employees for the insurance companies. The parent company also maintains a transportation department that makes travel arrangements for its employees.

On October 22, 1969, Management Services placed an order with Gates Aviation Corporation for the purchase of a Learjet, Model No. 25. Its Vice President and Secretary, Alfred Kuraner, negotiated the purchase of the craft and signed the purchase order accepted by Gates Aviation in Denver, Colorado, on October 30, 1969.

The aircraft was assembled in Wichita, Kansas, and flown to Denver. On January 8, 1970, the airplane was delivered to Respondent's pilot in Colorado in exchange for Respondent's check for $928,000 which represented payment in full for the jetcraft. Several test flights were conducted by the

pilot and the co-pilot employed by Respondent. On January 21, 1970, the plane was flown to Kansas City. On January 23, 1970, the plane was flown to Wichita, Kansas, to the Learjet Assembly and Service Center, and returned to Kansas City the same day. On January 25, 1970, Respondent began to use the new aircraft for business purposes, chiefly the transportation of its executives to its 20 branch offices located across the nation and in Canada. In the interval from January 21, 1970, through October 31, 1971, the plane was hangared in Kansas City on 136 occasions.

The Department of Revenue of the State of Missouri, on March 31, 1970, levied a tax of $27,840 on the aircraft. The tax was paid by Respondent under protest. Respondent also filed a claim for a tax refund in an amount identical to the tax levied and paid. In a hearing before the Department of Revenue the claim for refund was denied. Respondent obtained review of the decision of the Director of Revenue in the Circuit Court of Jackson County which held that the use of Respondent's airplane was not taxable under § 144.610, RSMo 1969. Appeal from that judgment of the circuit court was made to this Court by the Director of Revenue.

We consider first whether Missouri may constitutionally impose a use tax on Respondent's aircraft, and, secondly, if the use tax is constitutionally valid, whether Respondent's aircraft falls within an exemption provided by the Compensating Use Tax Law.

The tax for the use of Respondent's aircraft was levied pursuant to § 144.610, RSMo 1969, which provides:

"1. A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or

manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

"2. Every person storing, using or consuming in this state tangible personal property purchased from a vendor is liable for the tax imposed by this law, and the liability shall not be extinguished until the tax is paid to this state, but a receipt from a vendor authorized by the director of revenue under the rules and regulations that he prescribes to collect the tax, given to the purchaser in accordance with the provisions of section 144.-650, relieves the purchaser from further liability for the tax to which receipt refers."

■ No state may impose a tax on transaction of interstate commerce, U.S. Const. Art. I, § 8; however, use taxes have consistently been upheld by the United States Supreme Court and recognized as not only a means to augment state revenues but also as a means to eliminate the incentive to purchase from out-of-state merchants in order to escape local sales taxes thereby keeping in-state merchants competitive with sellers in other states. *Henneford v. Silas Mason Company,* 300 U.S. 577, 581–583, 57 S.Ct. 524, 81 L.Ed. 814 (1937); *Southwestern Bell Tele. Co. v. Morris,* 345 S.W.2d 62 (Mo. banc 1961).

■ The Missouri use tax is not imposed upon the article or upon its sale; rather, the tax is levied on the privilege of using, storing or consuming the article within this state. The primary function of the use tax is to complement, supplement, and protect the sales tax by creating "equality of taxation of purchases or use of property purchased outside the state which cannot be reached as sales because of the commerce clause of the federal constitution." *Farm and Home Savings Ass'n v. Spradling,* 538 S.W.2d 313, 317 (Mo. banc 1976).

In *Southern Pacific Company v. Gallagher,* 306 U.S. 167, 176–178, 59 S.Ct. 389, 393–394, 83 L.Ed. 586 (1939), the Supreme Court upheld application of the California use tax

to rolling stock and other railroad equipment, and said:

"In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. * * * We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun. * * * 'Practical continuity' does not always make an act part of interstate commerce. This conclusion does not give preponderance to the language of the state act over its effect on commerce. State taxes upon national commerce or its incidents do not depend for their validity upon a choice of words but upon the choice of the thing taxed. It is true, the increased cost to the interstate operator from a tax on installation is the same as from a tax on consumption or operation. This is not significant. The prohibited burden upon commerce between the states is created by state interference with that commerce, a matter distinct from the expense of doing business. A discrimination against it, or a tax on its operations as such, is an interference. A tax on property or upon a taxable event in the state, apart from operation, does not interfere. * * *."

■ It is conceded that on January 20, 1970, Respondent's plane was flown to Missouri, that it was flown to Kansas and returned to Missouri on January 23, 1970, and that Respondent began to use the plane for interstate purposes on January 25, 1970. There was, therefore, a time during which the plane had reached the end of its interstate transportation and had not begun to be consumed in interstate operation. This period of time was the "taxable moment" defined by the United States Supreme Court in *Southern Pacific v. Gallagher*, supra. We hold the assessment of the use tax was constitutionally valid. There is support in other states for this conclusion. See *Flying Tiger Line v. State Board of Equalization*, 157 Cal.App.2d 85, 320 P.2d 552 (1958); *Sundstrand Corporation v. Department of Revenue*, 34 Ill.App.3d 694, 339 N.E.2d 351 (Ill.App.1975); *In Re Woods Corporation*, 531 P.2d 1381 (Okl.1975); *Vector Company v. Benson*, 491 S.W.2d 612 (Tenn.1973); *Aspen Airways Inc. v. Heckers*, 499 P.2d 636 (Colo.App.1972).

■ Turning to its alternative argument, Respondent contends that even if the plane had been sufficiently withdrawn from interstate commerce to create a taxable moment, Respondent is still exempt from taxation because of its use of the aircraft outside the state. Under § 144.610.1 the use tax is imposed on the privilege of storing tangible personalty purchased from outside the state. "Storage," by definition under § 144.605(7) is "any keeping or retention in this state of tangible personal property purchased from a vendor for any purpose, except sale or subsequent use solely outside the state." Respondent asserts that the phrase "solely outside the state" should be interpreted to include use which is wholly *interstate* in character. We do not agree. We find no ambiguity in the phrase "solely outside the state." In the period from January 21, 1970, through October 31, 1971, Respondent's plane was hangared in Kansas City on 136 occasions. It was not used "solely outside the state."

The judgment is reversed.

All concur.