**Richard A. KING, Director of Revenue, State of Missouri, Petitioner,**

v.

**L & L MARINE SERVICE, INC., et al., Respondents.**

**No. 64189.**

Supreme Court of Missouri, En Banc.

March 29, 1983.

---

John Ashcroft, Atty. Gen., Richard L. Wielder, Asst. Atty. Gen., Jefferson City, for petitioner.

William G. Guerri, Thompson & Mitchell, St. Louis, for respondents.

BILLINGS, Judge.

Appeal by the Director of Revenue from an order of the Administrative Hearing Commission invalidating the assessment of Missouri use tax by the Department of Revenue against L & L Marine Service, Inc., taxpayer. The Commission determined the taxpayer was not liable for taxes under the provisions of the Missouri use tax, § 144.-610, RSMo 1978. Exclusive jurisdiction is in this Court. Mo. Const. Art. V, § 3. We affirm.

The facts, as stipulated by the parties, are brief. Taxpayer, L & L Marine, purchased a Rockwell Sabreliner 40 aircraft in 1977 for $575,000. A vice-president for the company accepted delivery of the aircraft in Delaware on July 14, 1977, then flew it to Newark International Airport to finish conducting corporate business in New York. The following day, July 15, the aircraft was flown to St. Louis to return this corporate officer to Missouri. It was used on July 16 to deliver another corporate officer to a meeting in Michigan and has subsequently been used in conducting the business of L & L Marine and its affiliated corporations and partnerships both in and outside of Missouri.[1]

L & L admittedly took delivery in Delaware to avoid liability for Missouri sales and use taxes. No sales tax or use tax was ever paid on the purchase, use or storage of the aircraft, either in Delaware or Missouri. No personal property tax has ever been paid on the aircraft.

---

1. During the assessment period, July 1977 through December 1978, approximately 97 percent of the aircraft's total flight time was logged on interstate travel, while approximately 3 percent was logged during the course of wholly intrastate trips.

The Department of Revenue assessed taxpayer for unpaid tax and penalties for the period July 1, 1977 to December 12, 1978. Taxpayer appealed. The Administrative Hearing Commission held, that because the aircraft was already engaged in interstate commerce prior to its initial entry into Missouri and was never withdrawn from interstate commerce, there was no taxable moment at the time of entry or any other time covered by the assessment. Therefore, taxpayer was not liable for the use tax assessed by the Department.

Section 144.610, RSMo 1978 states:

1. A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

2. Every person storing, using or consuming in this state tangible personal property purchased from a vendor is liable for the tax imposed by this law, and the liability shall not be extinguished until the tax is paid to this state ....

■ The use tax is a levy on the privilege of using within the taxing state property purchased outside the state, if the property would have been subject to the sales tax had it been purchased at home. *Southwestern Bell Telephone Company v. Morris,* 345 S.W.2d 62, 66 (Mo. banc 1961). This Court has previously noted that:

[U]se taxes have consistently been upheld by the United States Supreme Court and recognized as not only a means to augment state revenues but also as a means to eliminate the incentive to purchase from out-of-state merchants in order to escape local sales taxes thereby

keeping in-state merchants competitive with sellers in other states.

*Management Services, Inc. v. Spradling,* 547 S.W.2d 466, 468 (Mo. banc 1977).

Taxpayer L & L Marine readily admits structuring the purchase transaction to evade this tax. We have strongly criticized such evasion in the past and do so again here.

It begs credibility to believe the Missouri legislature intended to relieve purchases ... from out of state merchants from the compensating use tax but to require that sales made by in-state merchants ... be subject to the sales tax and thereby give a substantial competitive advantage to out-of-state merchants over resident merchants.

*Farm & Home Savings Association v. Spradling,* 538 S.W.2d 313, 317 (Mo.1976).

For the purposes of the use tax § 144.-605(7) defines "storage" as "the keeping or retention in this state of tangible personal property purchased from a vendor for any purpose, except sale or subsequent use solely outside the state." The term "use" is defined as "the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it does not include storage or the sale of the property in the regular course of business". Section 144.-605(10), RSMo 1978.

The stipulated facts establish that the aircraft has been used for wholly intrastate travel, is hangared and serviced between flights in Missouri, and is owned and controlled by a corporation which locates its principal offices in Missouri. These factors bring the aircraft within the purview of the Missouri use tax. However, appellant contends such an assessment is precluded in this case because the plane was placed in interstate commerce by virtue of the diversion from Delaware to New Jersey before it was brought to Missouri.

■ No state may impose a tax on the transaction of interstate commerce. U.S. Const. Art. I, § 8, Cl. 3; *Helson & Randolph v. Kentucky,* 279 U.S. 245, 252, 49 S.Ct. 279,

281, 73 L.Ed. 683 (1929). The United States Supreme Court *has* upheld application of a use tax in California where rolling stock and other railroad equipment were ordered out of state, brought in and *subsequently* used in interstate commerce. The Court reasoned:

> We think there was a taxable moment when the [articles] had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership respectively—was effective. The interstate movement was complete. The interstate consumption had not begun.

*Southern Pacific Company v. Gallagher,* 306 U.S. 167, 177, 59 S.Ct. 389, 393, 83 L.Ed. 586 (1939).

■ However, in that case, the equipment had not been placed in interstate commerce prior to entry into California. In this case, the plane had been engaged, albeit fleetingly, in interstate commerce. Therefore, we must reluctantly conclude at the time of the entry into Missouri, the plane was already being "consumed in interstate commerce." Where an airplane has become an instrumentality of interstate commerce *prior* to entry into the assessing state, there is no taxable to moment upon entry. *See W.R. Grace & Co. v. Comptroller,* 255 Md. 550, 258 A.2d 740 (Md.1969).

■ There still remains the issue of whether the plane was withdrawn from interstate commerce, that is, whether a taxable moment occurred after arrival. The airplane was hangared and serviced in Missouri between flights. It was flown on at least twenty wholly intrastate trips out of a total of 531 during the assessment period. However, use taxes may only be imposed if the article to be taxed is employed in a local activity separate from an aspect of interstate commerce. "The mere cessation of flight and lapse of time between the flights of aircraft does not, in itself, indicate a withdrawal of the aircraft from interstate commerce." *W.R. Grace,* 258 A.2d at 747.

■ We must conclude that the plane was placed in interstate commerce before its entry into Missouri and never withdrawn during the assessment period. The application of the Missouri use tax in this situation would be repugnant to the commerce clause of the United States Constitution.

The judgment of the Administrative Hearing Commission is affirmed.

WELLIVER, HIGGINS, GUNN and DONNELLY, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, C.J., dissents and concurs in separate dissenting opinion of BLACKMAR, J.

BLACKMAR, Judge, dissenting.

I wholly agree with the holding in the principal opinion that the cute trick attempted by the taxpayer (or, at this stage perhaps, the non-taxpayer), for the admitted purpose of avoiding the payment of Missouri's compensating use tax on the purchase of an airplane, did not take it out of the coverage of the Missouri Statutes, §§ 144.600–144.615, RSMo 1978. I cannot agree that any such scheme and device was effective to disable the Missouri legislature from taxing an incident which it has chosen to tax, by imposing the bar of the Commerce Clause (Art. I, § 8, cl. 3) of the Constitution of the United States. I therefore dissent.

Although a classical economist might feel that the use taxes are anticompetitive and inhibit consumers from seeking the best bargains available, the United States Supreme Court has recognized their propriety and validity over a period of many years. *Henneford v. Silas Mason Company,* 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). By means of the use tax a state may protect its industries and merchants against competition from states which do not choose to impose sales taxes, or which have sales taxes lower than Missouri's. Purchasers situated in Missouri and who might be expected to make the bulk of their purchases in Missouri, then are not able to derive tax advantages from going elsewhere.

The facts are all stipulated, and so there is no question of deference to the findings of the administrative tribunal. This taxpayer is a Missouri corporation, with its principal office and place of business in Missouri. It has a national business, all of which relates to interstate commerce, but that circumstance does not exempt it from paying sales taxes at the site of its purchases, and should not exempt it from paying use taxes which may properly be levied. The plane in question was subject to the control of the corporation at all times, and the people in the executive office in Missouri had the authority to give directions about its use. It was regularly hangared at Lambert International Airport between trips, and its regular repair facilities were in Missouri. If the present result stands then the corporation would have derived a positive advantage from going outside of the state to purchase the plane.

The leading case involving the application of use taxes to property used in interstate commerce is *Southern Pacific Company v. Gallagher,* 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939). There the Supreme Court allowed California to apply its use tax to property which was used solely in interstate commerce in the operation of a railroad. The railroad corporation was organized under Kentucky law, but had its principal office in California. The case involved two kinds of property, office supplies and maintenance supplies. These were purchased outside the state of California and shipped in on the railroad's own lines without cost. The supplies were stored in California pending use. Sometimes the period of storage was very short, as with construction materials shipped to a job site. The court said that a "taxable moment" was required in order to permit the assessment of a use tax, and held that storage, even for a very brief period, was such a moment. *Id.* at 177, 59 S.Ct. at 393. The court explained its position further:

> the taxable event is the exercise of the property right in California . . . .

306 U.S. at 181, 59 S.Ct. at 395.

In *United Airlines, Inc. v. Mahin,* 410 U.S. 623, 93 S.Ct. 1186, 35 L.Ed.2d 545 (1973), Illinois levied a use tax on aviation fuel which had entered Illinois by pipeline or tank car from other states and was stored at Midway Airport or O'Hare Field. The tax was measured by the quantity of fuel loaded into planes departing from the airports. The Court held that either storage or withdrawal could be a taxable incident and that the tax could be measured by the entire volume of fuel loaded into interstate as well as intra-state flights. Thus the tax could attach the moment that fuel was pumped into a plane which was ready for immediate departure to a point in another state.

In *Management Services, Inc. v. Spradling,* 547 S.W.2d 466 (Mo.1977), this Court upheld the application of the use tax in the purchase of an airplane by a corporation organized under Missouri law and having its principal place of business in Missouri. The aircraft was manufactured in Kansas but was then shipped to Colorado, where the purchaser took the delivery on January 8, 1970. After several test flights, the aircraft, on January 23, 1980, was flown to Kansas City, Missouri. On January 23 it flew to the manufacturer's place of business in Wichita, Kansas, and back to Kansas City the same day. On January 25, it began transporting company personnel in interstate commerce. This Court very appropriately decided the case in exact terms of *Southern Pacific,* considering the periods from January 21 to January 23, and from January 23 to January 25 as "storage," and the use after January 25 as "consumption" in interstate commerce. We decided the case on the narrow basis that the storage preceded the consumption, so that the use tax was expressly permitted by *Southern Pacific.* The clear analogy permitted us to dispose of the case without further extended analysis.

This taxpayer undoubtedly structured the transaction now in question with *Management Services* in mind, and seeks to maintain the proposition that a use tax may not be levied on property used in interstate commerce unless there is a taxable moment,

such as storage, which precedes the use in interstate commerce. I do not believe that *Southern Pacific* is so confining, or that the Court there intended to cast a mold into which all factual situations must fit before the use tax is permissible on property used in interstate commerce.

The case before us is indistinguishable from *Management Services,* except for the journey of the plane from Wilmington, Delaware [1] to Newark, New Jersey, so that the officer who accepted delivery could complete further business in New York, and its trip from Newark to St. Louis to return the officer to his home base, and to take the plane to the place where it would be accessible to the company officers. The plane, then, was on the ground at the company's principal place of business and readily subject to its control, which was exercised out of its principal office. Clearly there was an "exercise of property rights," wholly within Missouri. Under these circumstances even a moment on the ground at Lambert constituted a "taxable moment." Moments were repeated over the ensuing months. There were taxable moments in Missouri which could be found in no other state. These moments are entirely sufficient to support the imposition of the use tax.

*Northwest Airlines v. Minnesota,* 322 U.S. 292, 64 S.Ct. 950, 88 L.Ed. 1283 (1944) involved personal property taxes but is very helpful in resolving this case. The taxpayer was an interstate air carrier, organized under Minnesota law and having its principal offices in St. Paul. At issue was the ad valorem taxation of its fleet of airplanes for the year 1939. The tax was levied on the planes owned on May 1 of that year. All of its planes had been engaged wholly in interstate flying prior to the taxable date, and continued to be so engaged. All planes came into Minnesota at some time during the year but departed for ports in other states after stopping simply to discharge passengers and cargo and to receive other passengers and freight, except for periods when they were down for repair and over-

haul. A majority of the Court found that there were sufficient taxable incidents in Minnesota, which could not be repeated in other states, so as to permit the taxation of all of the planes for their full value, without apportionment. All five of the majority justices agreed that the analogy of the "home port" of a ship applied to permit the imposition of the tax. Justice Frankfurter gave additional prominence to the fact of Minnesota incorporation, and Justice Jackson discounted this, but felt that the combination of location of executive offices and regular presence of the planes in Minnesota was sufficient to establish St. Paul as "home port" and to support the tax.

The "taxable incidents" found in *Northwest Airlines* are exactly the same as the incidents in this case. It is entirely appropriate to say that Lambert is the "home port" of the aircraft here in question. Its arrival at its home port is entirely sufficient as a "taxable moment." The prior interstate journey does not change this situation.

The principal opinion relies substantially on the case of *W.R. Grace & Co. v. Comptroller,* 255 Md. 550, 258 A.2d 740 (1969). Grace was a Connecticut corporation. The report does not show where its principal office or place of business was. It had a "division" in Maryland, but the report does not demonstrate that the planes in issue were used exclusively, or even substantially, in the business of the division. The court indicated, rather, that they were used in the business of "W.R. Grace & Co.," and it is patent that the chief executive officers of the company, wherever they might be, were the persons entitled to give authoritative directions about the use of the planes. The only local incident was that of "storage" or "hangaring," which took place at Friendship airport in Maryland. Although there are decisions indicating that this incident might be sufficient to support local taxation, the Maryland court did not so hold, on the basis that the storage at the hangar was incidental to the use of the planes in inter-

1. Delaware had no sales tax.

state commerce.[2] The court in so holding placed more restrictions on the taxing power of the state than the federal constitution requires. The decision is not binding on us in any sense. The report, furthermore, shows that the court rested its conclusion, at least in part, on local comptrollers' rules. This circumstance may have forestalled review of the decision by the Supreme Court of the United States. Be all of these circumstances as they may, however, the present record contains facts such as domicile of the corporation, location of the principal office, and right of local control, which are not present in the *Grace* case.

*Grace* does mention the fact that the planes had made other interstate journeys on their owner's business before landing for the first time at Friendship. This circumstance is cited, among others, to demonstrate the lack of total connection to Maryland. There is no indication that the prior journeys were contrived as a part of a tax-avoiding scheme. *Grace* is not strong support for the broad proposition the taxpayer seeks to draw from it—that any "interstate moment" prior to the "taxable moment" of landing and remaining on the ground at "home port" will avoid the use tax.

The Maryland court, furthermore, makes an abortive attempt to distinguish *Northwest Airlines* by pointing out that there was no majority opinion. All three of the opinions in *Northwest* demonstrate that the present case shows adequate taxable incidents. Justice Douglas's qualification on *Northwest* in *Standard Oil Co. v. Peck*, 342 U.S. 382, 384, 72 S.Ct. 309, 310, 96 L.Ed. 427 (1952) simply says that "it was not shown that 'a defined part of the domiciliary corpus had acquired a taxable situs elsewhere.'" The tax which Missouri seeks could not possibly have been claimed by any other jurisdiction. *Northwest,* on its facts, is clearly applicable here.

The taxpayer also tries to make use of *Union Pacific Railroad Co. v. Utah State Tax Commission,* 110 Utah 99, 169 P.2d 804 (1946), in which eight diesel engines that the railroad had used for switching in Nebraska were moved to Salt Lake City, Utah, and used in switching operations there. The record does not show when the railroad acquired the engines or what taxes were paid at that time. Nor was the extent of use in Nebraska shown. That case obviously presented the problem as to whether each successive movement of property to another state would be the occasion for an additional use tax. The case involves circumstances having no counterpart in the present record, and is of little help in resolving the matter now before us.

The position here advanced is supported by such decisions as *American Airlines, Inc. v. State Board of Equalization,* 216 Cal. App.2d 180; 30 Cal.R. 590 (1963), holding that shipment of aircraft parts to California for immediate installation in aircraft destined for interstate departure was constitutionally sufficient to invoke California use tax; *Vector Company, Inc. v. Benson,* 491 S.W.2d 612 (Tenn.1973), emphasizing "right to control"; *In re Woods Corporation,* 531 P.2d 1381, 1384 (Okl.1975), emphasizing the exercise "of rights incident to ownership and possession . . ."; and *Sundstrand Corporation v. Department of Revenue,* 34 Ill. App.3d 694, 339 N.E.2d 351, 354 (1975), characterizing the use tax as a tax on the "exercise of right of ownership." These cases of course differ as to facts but are helpful in showing that most courts which have dealt with the problem have borne in mind the essential purpose of use tax statutes and have applied them so as to permit states to protect their local interests, within the framework of Supreme Court decisions.

The multiple taxable incidents in Missouri are not rendered inoperative simply because the plane did not proceed immediately to Missouri after purchase. None of the cases cited by the taxpayer supports any "interstate moment" theory as a bar to the use tax. When the plane landed in St. Louis, at

---

**2.** *See Edelman v. Boeing Air Transport,* 289 U.S. 249, 53 S.Ct. 591, 77 L.Ed. 1155 (1933); *Nashville, Chattanooga & St. Louis R. Co. v.* *Wallace,* 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730 (1933).

the company's home, it was completely under the control of the company's management. The storage, even for a moment, is enough. It matters not what the plane had done earlier.

It is often said that personal property is presumed to have the domicile of the owner in the absence of a showing of permanent situs elsewhere. *Hawley v. Malden,* 232 U.S. 1, 34 S.Ct. 201, 58 L.Ed. 477 (1913); *Southern Pacific Co. v. Kentucky,* 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96 (1911). We do not have to decide here as between the state of incorporation and the state where the principal office is located, since the two coincide. The domicile is the place at which the corporation would be expected to make purchases. This state may protect its expectations by means of a use tax.

I do not dispute the taxpayer's assertion that tax avoidance, as distinguished from tax evasion, is as American as apple pie, but we should deal with fundamentals rather than accidents or episodes. The Commerce Clause serves a vital purpose in our federal scheme of government. When state taxes burden interstate commerce the Supreme Court of the United States has not hesitated to strike them down. When a tax does not burden interstate commerce and serves a proper local purpose, however, the Court has upheld it, as it has with use taxes. The principal opinion would subject Missouri traders to disadvantage in a transaction possessing substantial local incidents, or taxable moments. The conclusion is not required by any controlling decision, and is out of line with the cases reflecting the appropriate purpose of the use tax.

The principal opinion is based wholly on federal constitutional grounds and, as the opinion shows, operates to defeat the legislative intent. This Court, of course, has the authority and duty to give attention to controlling constitutional decisions, and to scrutinize the work of the state legislature to ensure compliance with federal constitutional standards. If there is conflict the statute must yield, wholly or pro tanto. The strong presumption, however, is in favor of validity. The legislative intent should be set aside only in a clear case. I find the cases ruled on neither compelling nor persuasive. My reading of the controlling authorities persuades me that the state's position is sound.

Up to this point I have not mentioned the wholly intra-state flights the plane made after arrival at its home base at Lambert Field. These flights, in and of themselves, supply the required "taxable moment" to support the use tax. They were clearly contemplated at the time the plane was acquired. The taxpayer proves too much when it tries, as it did at oral argument, to avoid the effect of the intra-state flights by claiming that the taxpayer's whole business constituted interstate commerce. Local incidents of interstate business are taxable locally. *Southern Pacific, supra.* The intra-state flights supply the "local activity separate from an aspect of interstate commerce" which the principal opinion finds necessary. More than this, they demonstrate the taxpayer's complete control over the plane at its legal and commercial domicile, which is a privilege that may be taxed.

The decision of the Administrative Hearing Commission should be reversed and the case remanded with instructions to uphold the assessment of the tax.