DIRECTOR OF REVENUE, Appellant,

v.

SUPERIOR AIRCRAFT LEASING COMPANY, INC., and the Administrative Hearing Commission of the State of Missouri, Respondents.

No. 68857.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

Rehearing Denied Sept. 15, 1987.

William L. Webster, Atty. Gen., Melodie Powell, Asst. Atty. Gen., Jefferson City, appellant.

John W. Inglish, Jefferson City, for respondents.

DONNELLY, Judge.

This is an appeal by the Director of Revenue from an order of the Administrative Hearing Commission invalidating the assessment of Missouri use tax, section 144.-610, RSMo 1986, by the Department of Revenue against Superior Aircraft Leasing Company, Inc. This Court has exclusive jurisdiction of the cause pursuant to Mo. Const. art. V, § 3, because it involves the construction of a revenue law of the state.

There is no dispute as to the facts. Respondent-taxpayer, Superior Aircraft Leasing Co., is a Missouri corporation with its office in Lebanon, Missouri, and its principal place of business in Troy, Ohio. On April 2, 1980, the president of Superior Aircraft, Kenneth Low, purchased and took delivery of an airplane at Beech Field, Wichita, Kansas. The airplane was a 1980 Model 58 Beechcraft Baron (FAA Registration No. N427KL). Low intended to fly the plane directly to Dayton International Airport in Vandalia, Ohio, but because of darkness and his concern for safety in piloting a new aircraft during darkness, he decided to stay overnight in Lebanon, Missouri. He completed his trip to Ohio on the following day.

The aircraft was purchased in order to lease it to Ohio Aviation Company, a company that is in the business of selling Beech aircraft and providing an air charter service. Ohio Aviation leased the aircraft for use in the charter service and for promoting the sale of other aircraft. Upon its arrival in Ohio, the aircraft in question was immediately placed into service pursuant to the oral lease. When not in use by Ohio Aviation, respondent was allowed to use the aircraft for its own business.

Respondent admittedly took delivery in Kansas to avoid liability for Missouri sales and use taxes. No sales or use tax was ever paid on the purchase, use or storage of the aircraft in Kansas, Ohio or in any other state. No personal property tax has ever been paid on the aircraft.

The Department of Revenue assessed respondent for unpaid tax, penalties and interest for the period January 1, 1981, to September 30, 1981. On appeal, the Administrative Hearing Commission held that respondent was not liable for the use tax assessed by the Department of Revenue.

Section 144.610, RSMo 1986, in pertinent part, reads:

1. A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property ... This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

2. Every person storing, using or consuming in this state tangible personal property purchased from a vendor is liable for the tax imposed by this law, and the liability shall not be extinguished until the tax is paid to this state....

For purposes of the use tax, section 144.-605(7), RSMo 1986, defines "storage" as "the keeping or retention in this state of tangible personal property purchased from a vendor for any purpose, except sale or subsequent use solely outside the state." The term "use" is defined as "the exercise of any right or power over tangible personal property incident to the ownership or control of that property, except that it does not include storage or the sale of the property in the regular course of business." Section 144.605(10), RSMo 1986.

The use tax is a levy on the privilege of using within the taxing state property purchased outside the state, if the property would have been subject to the sales tax had it been purchased at home. *Southwestern Bell Telephone Co. v. Morris*, 345 S.W.2d 62, 66 (Mo. banc 1961). Use taxes have been consistently upheld by the Unit-

ed States Supreme Court[1] and are recognized as serving a dual purpose. The primary function is to "complement, supplement, and protect the sales tax." *Management Services v. Spradling*, 547 S.W.2d 466, 468 (Mo. banc 1977). It achieves this goal by imposing the tax on the "exercise of incidents of ownership of property that was not subject to the sales tax at the time of its acquisition" because of the commerce clause of the United States Constitution. White, *State Sales and Use Taxes-Variations, Exemptions, And The Aviation Industry,* 45 Journal of Air Law and Commerce 509, 515–516 (1979–80). In doing so, it eliminates "the incentive to purchase from out-of-state merchants in order to escape local sales taxes thereby keeping instate merchants competitive with sellers in other states," and it also provides a means to augment state revenues. *Management Services v. Spradling, supra* at 468.

For determining the applicability of the "use" tax, this Court has adopted and consistently followed the "taxable moment" analysis first recognized in *Southern Pacific Company v. Gallagher*, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939). *See, Management Services v. Spradling, supra* at 469, and *King v. L & L Marine Service,* 647 S.W.2d 524, 527 (Mo. banc 1983). The main premise of this theory is that there is no burden on interstate commerce when a period of time is found during which the property has reached the end of its interstate movement and has not yet begun to be consumed in interstate operations. That period of time is the "taxable moment." Under this theory, it is the period when the property ceases to be moved in interstate commerce that is taxable, rather than the transaction of interstate commerce itself.[2]

In *Gallagher,* the United States Supreme Court upheld application of a California use tax where supplies and equipment were transported to California from out-of-state and then consumed in the operation and maintenance of the interstate railway system. The Court explained:

> We think there was a taxable moment when the [goods] had reached the end of their interstate transportation and had not begun to be consumed in interstate operations. At that moment, the tax on storage and use—retention and exercise of a right of ownership respectively— was effective. The interstate movement was complete, the interstate consumption had not begun.

*Southern Pacific Co. v. Gallagher*, 306 U.S. at 177, 59 S.Ct. 389.

If we could assume that the "taxable moment" doctrine has continuing viability, we would have no difficulty in finding that a "taxable moment" did not occur in the present case. However, the Director of Revenue contends that the "taxable moment" analysis, adopted by this Court in *Management Services* and applied in *King,* is no longer the proper method for determining the validity of a state tax and we must agree.

The contemporary approach of the United States Supreme Court was announced in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). The Supreme Court therein "attempted to clarify the apparently conflicting precedents it has spawned," in determining the effect of the Commerce Clause on state taxation of interstate commerce. *Mobil Oil Corp. v. Commission of Taxes,* 445 U.S. 425, 443, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980). The basic principle that interstate commerce is immune from state and local taxation was rejected. Today, "interstate commerce may constitutionally be made to pay its way." *Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981), (citing *Complete Auto Transit, supra,* and *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed.2d 823 (1938)).

---

**1.** *See, e.g., Henneford v. Silas Mason Co.,* 300 U.S. 577, 581–583, 57 S.Ct. 524, 526–27, 81 L.Ed. 814 (1937).

**2.** It is important to keep in mind that the "taxable moment" analysis was based at the time of

its inception on the rule that a state could not impose a tax on the transaction of interstate commerce. U.S. Const.Art. I, section 8, Cl. 3; *Helson & Randolph v. Kentucky,* 279 U.S. 245, 252, 49 S.Ct. 279, 281, 73 L.Ed. 683 (1929).

The State's right to tax interstate commerce is limited, however, and no state tax may be sustained unless the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. *Maryland v. Louisiana*, 451 U.S. at 754, 101 S.Ct. at 2133. Vermont and Nevada, when confronted with a challenge to the imposition of use tax on an aircraft, have applied the *Complete Auto Transit* test. *See, Whitcomb v. Commissioner of Taxes*, 144 Vt. 466, 479 A.2d 164 (1984); *Great American Airways v. Nevada State Tax Commission*, 101 Nev. 422, 705 P.2d 654 (1985). *See also, Delta Air Lines, Inc. v. Dept. of Revenue*, 455 So.2d 317 (Fla.1984) (test used in imposing state sales tax on purchase of aviation fuel); and *Burlington Northern Railroad Co. v. Ragland*, 280 Ark. 182, 655 S.W.2d 437 (1983) (test used in denying application of use tax to railway equipment).

Here, even though the plane was hangared and repairs, if needed, were made in Dayton, Ohio, there were contacts with Missouri sufficient to create a substantial nexus. During the period April 2, 1980, through September 1981, 17.7 percent of the total flight hours were logged on flights to Missouri solely for Superior Aircraft's business. All of these flights, with the exception of one for inspecting a construction site, were recorded as being for board meetings of Superior Aircraft. The time spent in Missouri for each of those trips ranged from several days to approximately a week.[3]

Because Superior Aircraft is a corporation organized and licensed under the laws of Missouri and maintains a business office in Missouri, it is reasonable to infer that the board meetings were conducted in accordance with Missouri law. Additionally, if necessary, Superior Aircraft could have used Missouri state courts to enforce resolutions arising from such board meetings. Such evidence shows both that a "substantial nexus" exists with Missouri and that the tax is "fairly related" to the services provided by the state.

The use tax imposed herein is also fairly apportioned. Multi-state tax burdens can constitutionally be avoided by either allowing an offset or credit for sales or use taxes paid in another state, or by a system of apportionment. *International Harvester Co. v. Department of Treasury*, 322 U.S. 340, 60, 64 S.Ct. 1019, 1035, 88 L.Ed. 1313 (1944). Superior Aircraft has not paid sales or use tax in any other state and even if it had done so Missouri has a system of tax credits for taxes paid in other states. *See*, Section 144.450, RSMo 1986.

The remaining element of the test, whether the tax is discriminatory, requires that the state place no greater burden upon interstate commerce than it places upon competing intrastate commerce of like character. *Complete Auto Transit*, 430 U.S. at 282, 97 S.Ct. at 1080. Missouri's use tax makes no distinction between interstate and intrastate businesses. Any business, intrastate or interstate, which makes an out-of-state purchase of an airplane to be stored, used or consumed in Missouri, is liable for use taxation. There is no discrimination since interstate and intrastate commerce are equally burdened.

Under the test prescribed in *Complete Auto Transit*, imposition of the Missouri use tax in this case is permissible under the

---

**3.** The following is a listing of those flights including actual flight hours:

    a. May 28, 1980—June 2, 1980, 7 days [4.9 hours]

    b. July 24, 1980—July 27, 1980, 4 days [4.6 hours]

    c. August 17, 1980—August 24, 1980, 8 days [4.8 hours]

    d. Sept. 22, 1980—Sept. 28, 1980, 6 days [6.2 hours]

    e. Oct. 12, 1980—Oct. 18, 1980, 6 days [5.4 hours]

    f. Oct. 25, 1980—Nov. 1, 1980, 7 days [7.3 hours]

    g. March 14, 1981—March 16, 1981, 2 days [4.8 hours]

    h. April 25, 1981—April 27, 1981, 2 days [4.7 hours]

    i. June 20–25, 1981 and June 27, 1981, 6 days [4.8 hours]

    j. July 23, 1981—August 1, 1981, 9 days [5.1 hours]

Commerce Clause of the United States Constitution. *Management Services v. Spradling* and *King v. L & L Marine Service* should no longer be followed.

The decision of the Administrative Hearing Commission is reversed.

BILLINGS, C.J., and BLACKMAR, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

In this case, Superior Aircraft, a Missouri corporation with an office in Lebanon, Missouri, and its principal place of business in Ohio, purchased an airplane in Kansas, in order to lease it to Ohio Aviation Company. The airplane was hangared and repaired in Ohio. When the airplane was not in use by Ohio Aviation, Superior was allowed to use it. Superior in fact used the airplane on flights to Missouri for only 7% of the period in question.[1] The Department of Revenue has attempted to impose an unapportioned tax on the airplane, since no other state has imposed such a tax. The majority would allow the tax. I disagree with the majority's position.

There are two issues in this case, (1) whether § 144.610, RSMo 1986,[2] authorizes

appellant to levy a use tax under these circumstances and (2) whether the levy of a use tax under these circumstances violates the Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3.

Section 144.610.1 provides:

A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property purchased on or after the effective date of sections 144.600 to 144.745 in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.020. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

Here, for safety reasons, the plane was in Missouri for one night before proceeding to its destination in Ohio. Once in Ohio, the plane was under the primary control of Ohio Aviation, the lessees. Only when Ohio Aviation was not using the plane was respondent allowed to use it for short trips to Missouri. The plane was repaired and hangared in Ohio. Under these circumstances, I think that the airplane did not "finally come to rest within this state"[3]

---

1. The majority states that the airplane logged 17.7% of its flight time from April 1980 through September 1981 on trips to Missouri. However, the period in question is January 1, 1981 to September 30, 1981. During that period, the airplane logged five trips to Missouri:
   1. March 14, 1981—March 16, 1981; 2 days
   2. April 25, 1981—April 27, 1981; 2 days
   3. June 20, 1981—June 25, 1981; 5 days
   4. June 27, 1981; 1 day
   5. July 23, 1981—August 1, 1981; 9 days.
   The airplane spent a total of 19 days on trips to Missouri, between January 1, 1981 and September 31, 1981. This represents less than 7% of the period in question.

2. All statutory references herein are to RSMo 1986, unless otherwise indicated.

3. This statutory requirement appears to require the equivalent of "domicile" for the airplane. What has been said to be the most comprehensive and correct definition which could be

given is that, in a strict legal sense, the domicile of a person is the place where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning.

Domicile has also been defined as that place in which a person's habitation is fixed, without any present intention of removing therefrom, and that place is properly the domicile of a person in which he has voluntarily fixed his abode, or habitation, not for a mere special or temporary purpose, but with a present intention of making it his permanent home.

Domicile has been defined, in terms of its elements, as residence at a particular place, accompanied by an intention, either positive or presumptive, to remain there permanently or for an indefinite or unlimited length of time.

28 C.J.S. *Domicile* § 1 (1941).

and that appellant lacks statutory authority to tax the respondent.

Even if one assumes, arguendo, that § 144.610.1 authorizes a tax on respondent in these circumstances, such a tax must pass commerce clause scrutiny.

As the majority recognizes:

Prior case law has established that a state tax is not *per se* invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way. *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274 [97 S.Ct. 1076, 51 L.Ed.2d 326] (1977). *See Western Live Stock v. Bureau of Revenue,* 303 U.S. 250 [58 S.Ct. 546, 82 L.Ed. 823] (1938). The State's right to tax interstate commerce is limited, however, and no state tax may be sustained unles the tax: (1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the State. *Washington Revenue Dept. v. Washinton Stevedoring Assn,* 435 U.S. 734, 750, 98 S.Ct. 1388, 1399, 55 L.Ed.2d 682 (1978).

*Maryland v. Louisiana,* 451 U.S. 725, 754, 101 S.Ct. 2114, 2133, 68 L.Ed.2d 576 (1981).

This test is a departure from our prior case law. See *Management Services v. Spradling,* 547 S.W.2d 466 (Mo. banc 1977); *King v. L. & L. Marine Service,* 647 S.W.2d 524 (Mo. banc 1983). This departure is required by and reflects the United States Supreme Court's clarification of the apparently conflicting precedents in the area. *Mobil Oil Corp. v. Commissioner of Taxes,* 445 U.S. 425, 443, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980). The "taxable moment" test of prior case law should be replaced with this new, four-prong test.

Here, there is no allegation that the tax fails to fulfill the first and third of the requirements announced by the United States Supreme Court. The problems with the majority's analysis arise with the second and fourth requirements.

The second requirement is that the tax "is fairly apportioned." In this case the airplane spent only 7% of the period in question on trips to Missouri for respon-

dent. Appellant seeks to tax respondent as though the airplane were used exclusively in Missouri. An unapportioned tax on an item that was only related to Missouri 7% of the time is not, in my view, "fairly apportioned." The fact that the tax credit system *may* apportion the tax *if* other states impose a tax does not make this tax fairly apportioned in *this* case.

The fourth requirement is that the tax "is fairly related to the services provided by the state." Here, the airplane was hangered and serviced in Ohio. Respondent only utilized Missouri's services on five short trips during the year in question. Clearly, this tax, which is levied as though the respondent utilized the services of the state for its airplane throughout the year, is not "fairly related to the service provided by the State."

I cannot support taxation based upon such transient contacts with Missouri.

I would affirm the Administrative Hearing Commission of Missouri.