**STATE of Utah, Plaintiff and Appellee,**

v.

**Conrad STERKEL and William A. Pickett, Defendants and Appellants.**

No. 960384–CA.

Court of Appeals of Utah.

Feb. 21, 1997.

R. Dennis Ickes, Salt Lake City, for Plaintiff and Appellants.

Jan Graham, Michael M. Quealy, Norman K. Johnson, Salt Lake City, and Grant Woods, Jay R. Adkins, Phoenix, AZ, for Defendants and Appellee.

Before DAVIS, BILLINGS and GREENWOOD, JJ.

## OPINION

DAVIS, Presiding Judge:

Appellants Conrad Sterkel and William A. Pickett challenge the trial court's denial of their motion to dismiss citations and complaints filed against them by the State of Utah for failing to properly register their boats, a violation of Utah Code Ann. § 73–18–7(1) (Supp.1994). We affirm.

## BACKGROUND

Sterkel and Pickett have operated and maintained boats on Lake Powell within the Glen Canyon National Recreation Area (GCNRA) since 1984 and 1983, respectively. Because of their substantial size, the boats at issue are, in effect, permanently moored at Lake Powell marinas, which are operated by a GCNRA concessionaire. Appellants are not Utah residents. At all times relevant

herein, Pickett's boat has been registered in Arizona, while Sterkel's boat has carried a Colorado registration. Neither boat has ever carried a Utah registration.

On August 14, 1994, both Sterkel and Pickett were issued citations for violating Utah's boating registration requirement, codified at Utah Code Ann. § 73–18–7(1) (Supp.1994). In response to the State's Information charging appellants with violating section 73–18–7(1), a class B misdemeanor under Utah Code Ann. § 73–18–21 (1989), appellants filed a motion to dismiss. The trial court denied appellants' motion, stating:

> Defendants have demonstrated that federal regulation of boating activity within GCNRA is extensive, even pervasive. They have not, however, identified any conflict between federal laws and regulations and the state laws in question here. The question, as this court understands it, is whether compliance with the questioned state law would prevent or impede compliance with federal laws or regulations. Defendants have not identified any such interference.

The trial court also ruled against Sterkel and Pickett on their Federal Commerce Clause challenge to section 73–18–7(1) which was "based upon the theory that state taxation has limits ... [and] the taxes that they must pay in order to register their boats are not fairly related to services provided within GCNRA." The trial court noted that the State need not "demonstrate a direct *quid pro quo* relationship between revenues and expenditures," and determined that "[t]he Commerce Clause claim must therefore fail as well." Thereafter, appellants entered conditional no contest pleas, preserving for appeal all issues of the State's authority to require registration under section 73–18–7(1). They also preserved the right to withdraw their no contest pleas if successful in appealing the trial court's denial of their motion to dismiss. The trial court then convicted both Sterkel and Pickett, ordering each to pay a seventy-four dollar fine. This appeal followed.

## ISSUES PRESENTED ON APPEAL AND STANDARD OF REVIEW

Appellants contend the trial court erred by failing to conclude: (1) that the federal government, either by express statement, by a pervasive scheme of regulation, or by direct conflict with section 73–18–7, has preempted the State from passing boating registration legislation affecting boats within the exterior boundaries of the GCNRA; and (2) that section 73–18–7, by conditioning registration on the payment of property taxes, violates the Interstate Commerce Clause.

Whether the trial court properly denied appellants' motion to dismiss presents questions of law which we review for correctness, affording no deference to the trial court. *See State v. Pena*, 869 P.2d 932, 936 (Utah 1994); *West Valley City v. Streeter*, 849 P.2d 613, 614 (Utah.Ct.App.1993).

## ANALYSIS

Each of appellants' challenges attacks the enforceability of Utah's State Boating Act, codified at Utah Code Ann. §§ 73–18–1 to –22 (Supp.1994), which provides in relevant part:

> (1)(a) Each motorboat and sailboat on the waters of this state shall be registered, unless it is exempt from registration as provided for in Section 73–18–9.[1]

1. Utah Code Ann. § 73–18–9 (1989) states:
Registration under this chapter is not required for any of the following:
(1) a motorboat or sailboat already covered by a valid registration issued by its nonresident owner's resident state and it has not been within this state in excess of 14 days for the calendar year;
(2) a motorboat or sailboat from a country other than the United States temporarily using the waters of this state;
(3) a motorboat or sailboat whose owner is the United States, a state or subdivision thereof;

(4) a ship's lifeboat; or
(5) a motorboat or sailboat belonging to a class of vessels which is exempted from registration by the board after the board finds:
(a) that the registration of motorboats or sailboats of this class will not materially aid in their identification; and
(b) that the United States Coast Guard has a numbering system applicable to the class of motorboats or sailboats to which the motorboat or sailboat in question belongs, and the motorboat or sailboat would also be exempt

. . . .

(2)(a) The owner of each motorboat or sailboat required to be registered by this state shall file an application for registration with the division on forms approved by the division.

. . . .

(c) The division, before issuing a registration card and registration decals, shall require from each applicant a certificate from the county assessor of the county in which the motorboat or sailboat has situs for taxation containing one of the following statements:

(i) the property tax on the motorboat or sailboat for the current year has been paid;

(ii) in the county assessor's opinion, the property tax is a lien on real property sufficient to secure the payment of the property tax; or

(iii) the motorboat or sailboat is exempt by law from payment of property tax for the current year.

. . . .

(5) Any vessel with a valid marine document issued by the United States Coast Guard is exempt from the number display requirements of Subsection (4).

Utah Code Ann. § 73–18–7 (Supp.1994) (footnote added).

## I. Federal Preemption

Appellants make three arguments in support of their federal preemption challenge to the State's enforcement of Utah Code Ann. § 73–18–7; (1) Congress has expressly preempted the State from legislating in areas affecting "recreational vessels and assorted equipment operating on waters subject to the jurisdiction of the United States"; (2) federal legislation is sufficiently pervasive within the GCNRA as to leave "no room for independent state action within the GCNRA"; and (3) the State's enforcement of section 73–18–7 directly conflicts with "the Secretary of the Interior['s] and the Secretary of Transportation['s] enforcement of regulations governing a broad panoply of activities within the [GCNRA], including boating."

from numbering if it were subject to federal

■■■ The process used to determine whether federal laws have preempted state legislation is well settled: " ' "Pre-emption may be either express or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.' " ' " *FMC Corp. v. Holliday,* 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (citations omitted). If not by explicit language, preemption "may be presumed when the federal legislation is 'sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.'" *International Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (citations omitted). However, courts are not to "lightly infer preemption." *Id.; see also Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."), *rev'd on other grounds,* 331 U.S. 247, 256, 67 S.Ct. 1160, 1165, 91 L.Ed. 1468 (1947).

■■■ "In addition to express or implied pre-emption, a state law also is invalid to the extent that it 'actually conflicts with a . . . federal statute.'" *Ouellette,* 479 U.S. at 491, 107 S.Ct. at 811 (quoting *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978)). "Such a conflict will be found when the state law ' "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ' " *Id.* at 491–92, 107 S. Ct at 811 (citations omitted). Finally, "[t]he question, at bottom, is one of statutory intent, and we accordingly ' "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." ' " *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992) (citations omitted). In this context we analyze appellants' preemption challenge.

law.

### Express Preemption

■ Appellants first challenge the State's enforcement of section 73–18–7(1) by claiming that federal preemption has occurred through express congressional statement. In support of this argument, appellants cite 46 U.S.C. §§ 4301–4311 & §§ 13101–13110 (1995). Specifically, they allege that 46 U.S.C. § 4306 "expressly bar[s] states from enforcing their own recreational vessel performance and safety standards," grants "the Coast Guard the exclusive authority to establish safety regulations for pleasure boats[,] and explicitly provide[s] that all State regulations not identical to federal rules [are] invalid." Section 4306 states:

> Unless permitted ... under section 4305[2] of this title, a State or political subdivision of a State may not establish, continue in effect, or enforce a law or regulation establishing a recreational vessel or associated equipment performance or other safety standard or imposing a requirement for associated equipment ... that is not identical to a regulation prescribed under section 4302 of this title.

46 U.S.C.A. § 4306 (West Supp.1995) (footnote added). Contrary to appellants' contention, not only does this section fail to explicitly preempt the registration system incorporated by section 73–18–7, but numerous sections of title 46, along with applicable sections of the Code of Federal Regulations, expressly give the State the authority to enforce section 73–18–7.

Section 4302 of title 46 provides, in relevant part: "The Secretary may prescribe regulations ... requiring or permitting the display of seals, labels, plates, insignia, or other devices for certifying or evidencing compliance with safety regulations and standards of the United States Government for recreational vessels and associated equipment." 46 U.S.C.A. § 4302(a)(3) (West Supp.1995).[3] Moreover, 46 U.S.C.A. § 12301(a) (West Supp.1995) provides that "[a]n undocumented[4] vessel equipped with propulsion machinery of any kind shall have a number issued by the proper issuing authority *in the State in which the vessel principally is operated.*" (Emphasis added, footnote added.) Utah is a federally recognized "issuing authority" within the meaning of that section. *See* 33 C.F.R. pt. 173, app. A(a) (1995).

Additionally, chapter 123 of title 46 of the United States Code, specifically 46 U.S.C.A. § 12302 (West Supp.1995), requires the Secretary to "prescribe by regulation a standard numbering system for [undocumented] vessels." *See also* 33 C.F.R. §§ 173.1–.85 and 174.1–.125 (1995) (regulating state numbering, casualty, and accident reporting systems). Authorities that issue numbers pursuant to chapter 123 are authorized to "prescribe regulations and establish fees to carry out the intent of [chapter 123]." 46 U.S.C.A. § 12307 (West Supp.1995). Such fees are required to "apply equally to residents and nonresidents of the State ... [and a] State issuing authority may impose *only* conditions for vessel numbering that are—(1) prescribed by [chapter 123] or regulations of the Secretary about the standard numbering system; or (2) related to proof of payment of State or local taxes." 46 U.S.C.A. § 12307(1) & (2) (emphasis added). Finally, the State Recreational Boating Safety chapter of title 46, namely chapter 131, compels the Secretary's approval of state recreational boating safety programs "if the program includes[, among other criteria] ... a vessel numbering system approved or carried out by the Secre-

---

**2.** Section 4305 provides: "If the Secretary considers that recreational vessel safety will not be adversely affected, the Secretary may issue an exemption from this chapter or a regulation prescribed under this chapter." 46 U.S.C.A. § 4305 (West Supp.1995).

**3.** As defined in 46 U.S.C.A. § 2101(34) (West Supp.1995), the "Secretary" referenced in section 4302 is "the head of the department in which the Coast Guard is operating."

**4.** Title 46, section 12102, entitled "Vessels eligible for documentation," explains: "A vessel of at least 5 net tons that is not registered under the laws of a foreign country or is not titled in a State is eligible for documentation." 46 U.S.C.A. § 12102(a) (West Supp.1995). Because appellants' recreational boats do not meet these requirements, they are undocumented vessels and are subject to the requirements of sections 12301–12309. *See also* 46 U.S.C.A. § 2101(41) (West Supp.1995).

tary under chapter 123 of [title 46]." 46 U.S.C.A. § 13102(c)(1) (West Supp.1995).[5]

Mirroring United States Code title 46, several provisions of the Code of Federal Regulations authorize state boating registration schemes. For instance, federal regulation title 33, part 173 prohibits the use of any "vessel equipped with propulsion machinery of any type on waters subject to the jurisdiction of the United States," 33 C.F.R. § 173.11 (1995), unless the vessel "has a number issued on a certificate of number by the issuing authority in the State in which the vessel is principally used," 33 C.F.R. § 173.15(a)(1) (1995). The Code of Federal Regulations also adopts the United States Code's reciprocity provisions, providing:

> "When a vessel is numbered in a State, it is deemed in compliance with the numbering system of a State in which it temporarily is operated.... When a vessel is removed to a new State of principal operation, the issuing authority of that State shall recognize the validity of the number issued by the original State for 60 days."

33 C.F.R. § 173.17(a) & (b) (1995) (quoting 46 U.S.C. §§ 12302(c) & (d) (1995)). Moreover, the Code of Federal Regulations, like the United States Code, expressly enables states to condition boat numbering registration on payment of state or local taxes. 33 C.F.R. § 174.31(b) (1995); see 46 U.S.C.A. § 12307 (West Supp.1995) ("A State issuing authority may impose only conditions for vessel numbering that are ... related to proof of payment of State or local taxes.").

In light of the strong presumption against federal preemption of state laws, see *Ouellette*, 479 U.S. at 491, 107 S.Ct. at 811, and giving the language of the foregoing federal legislation its ordinary meaning, see *Morales*, 504 U.S. at 383, 112 S.Ct. at 2036, we address the State's enforcement of section 73–18–7. It is undisputed that Utah is a federally recognized boat registration issuing authority. With this authority comes the power, within the boating safety framework estab-

lished by part 173 of title 33, to establish a numbering system which may condition the issuance of a registration number on the payment of state or local taxes. *See* 46 U.S.C.A. § 12307; 33 C.F.R. § 174.31(b). Appellants here challenge the State's authority to enforce section 73–18–7(1) because section 73–18–7(2)(c) conditions the issuance of a registration card and decals on the payment of state property taxes. However, by explicit congressional expression, the State is authorized to both enact and enforce the precise type of legislation here at issue. Accordingly, appellants' express federal preemption challenge fails. Moreover, having concluded that Congress has expressly authorized the State to legislate and enforce laws such as it has here, appellants' remaining preemption arguments are without merit and we need not address them. *See State v. Holland*, 921 P.2d 430, 433 n. 2 (Utah 1996); *State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

## II. Commerce Clause

Appellants next assert that the Utah State Boating Act's requirement that property taxes be paid prior to the issuance of a boat registration card impermissibly violates the Federal Commerce Clause. The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate commerce ... among the several states." U.S. Const. art. I, § 8, cl. 3. In defining the scope of Commerce Clause application, the United States Supreme Court has declared:

> Although the criteria for determining the validity of state statutes affecting interstate commerce have been variously stated, the general rule that emerges can be phrased as follows: Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

---

5. As previously noted, appellants cite sections 13101–110 of title 46 in support of their federal preemption challenge, claiming that the broad scope of these sections makes it "apparent that the federal agencies intended to coordinate so as

to effectively cover water safety within the GCNRA." Because of our resolution of appellants' express preemption challenge, their chapter 131 claim necessarily fails.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ Paramount to any Commerce Clause challenge under the *Pike* test is the requirement that the item the state statute seeks to tax be in the stream of commerce. *See Henneford v. Silas Mason Co.,* 300 U.S. 577, 583, 57 S.Ct. 524, 527, 81 L.Ed. 814 (1937) ("A tax upon the privilege of use or storage when the chattel used or stored has ceased to be in transit is now an impost so common that its validity has been withdrawn from the arena of debate."); *Union Pac. R.R. v. Utah State Tax Comm'n,* 842 P.2d 876, 882 (Utah 1992) ("[The] commerce clause permits a state to tax property which has 'become part of the common mass of property within the state.'" (citation omitted in original)). The United States Supreme Court long ago declared constitutional taxes imposed "upon the privilege of use after commerce is at an end." *Henneford,* 300 U.S. at 582, 57 S.Ct. at 526. In doing so, the Court stated:

> Things acquired or transported in interstate commerce may be subject to a property tax, nondiscriminatory in its operation, when they have become part of the common mass of property within the state of destination.... For like reasons they may be subjected, when once they are at rest, to a nondiscriminatory tax upon use or enjoyment.

*Id.*

■ In the present case, it is undisputed that appellants' boats have been permanently moored at Lake Powell marinas, primarily in Utah, for more than ten years. These boats have long since sailed out of the stream of commerce. It is hard to fathom a different conclusion under the facts of this case. Accordingly, the State acts well within its authority when enforcing the property tax condition of section 73–18–7. Therefore, appellants' Commerce Clause challenge to the State Boating Act necessarily fails.

## CONCLUSION

Congress has specifically authorized the State to enact boat numbering legislation conditioning the issuance of a state-issued registration on the payment of state or local taxes. Also, the Commerce Clause is inapplicable because appellants' boats are not in the stream of commerce. Accordingly, appellants' challenge to Utah Code Ann. § 73–18–7(1) (Supp.1994), which conditions the issuance of state registration cards and decals on the payment of property taxes, necessarily fails. Thus, both the trial court's dismissal of appellants' motion to dismiss and appellants' convictions are affirmed.

BILLINGS and GREENWOOD, JJ., concur.