STATE of Utah, Plaintiff and Appellee,

v.

Thomas K. JONES, Defendant and Appellant.

No. 970402–CA.

Court of Appeals of Utah.

May 7, 1998.

Mark C. Jahne, Magna, for Defendant and Appellant.

Jan Graham, Kris C. Leonard, and David K. Gardner, Salt Lake City, for Plaintiff and Appellee.

Before WILKINS, JACKSON and ORME, JJ.

## OPINION

·JACKSON, Judge:

Thomas K. Jones appeals the denial of a post-trial motion to dismiss after entry of conviction for communications fraud, a second degree felony, in violation of Utah Code Ann. § 76–10–1801 (Supp.1997). We affirm.

## BACKGROUND

On May 20, 1996, Jones applied for federal disability retirement benefits based on a work-related injury he suffered while an employee of the United States Postal Service. He asserted in the application that the injury was so severe that he could no longer do his job. The State charged him with communications fraud, contending that the application contained intentional misrepresentations about the source of the injury and the extent of his disability. At trial, the State produced videotapes of Jones doing strenuous physical activities while away from work, such as playing basketball, baseball, and softball, despite his claim of disability. After viewing the tapes, several State and defense experts testified that Jones was not so disabled that he was entitled to disability retirement. The jury convicted Jones.

After the jury verdict was entered, Jones filed a motion to dismiss maintaining that the district court lacked subject matter jurisdiction. In the motion, he argued that Article I, Section 8, Clause 7 of the United States Constitution and the Federal Employees Retirement System (FERS), 5 U.S.C.A. §§ 8401–79 (West 1996 & Supp.1998), enact-

ed pursuant to the constitutional provision,[1] preempt the State from prosecuting him for fraud related to his application. The district court denied the motion. Jones appeals the denial of this motion.

## ISSUE

■ The sole issue on appeal is whether the trial court incorrectly concluded that FERS did not preempt the prosecution of Jones under state law for communications fraud.[2]

## ANALYSIS

Congress established FERS to provide a retirement scheme for federal employees. The system provides basic annuities, *see* 5 U.S.C.A. §§ 8410–25 (West 1996 & Supp. 1998), a thrift savings plan, *see id.* §§ 8431–40d, survivor annuities, *see id.* §§ 8441–45, and disability benefits, *see id.* §§ 8451–56. The statute creates administrative and management guidelines to implement and run the system. *See id.* §§ 8461–79.

Jones argues that FERS preempts the state communications fraud statute as it relates to any communications in his application for disability retirement. Jones never contends, however, that FERS expressly preempts state legislation affecting the implementation of FERS. Instead, he argues that the statutory structure and purpose implicitly evidence Congress's intention to preempt state action in this field. Specifically, he argues that the State "has impermissibly interfered with the operation of [FERS]" by prosecuting him for fraud, even though "Congress[ ] deliberate[ly] attempt[ed] to weigh balancing interests in the relationships between federal employees and employing agencies" when it enacted the law.

■ We do not "lightly infer preemption." *International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987); *accord State v. Sterkel*, 933 P.2d 409, 412 (Utah Ct.App.1997); *see also Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947) (stating Court assumed "historic police powers of the States were not to be superseded" by federal legislation). In fact, it is inappropriate for us to conclude that federal legislation has preempted state law "unless that was the clear and manifest purpose of Congress." *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152. This "clear and manifest purpose" to preempt state law can be shown either by express statutory language or by implication from the statutory structure and purpose. *See FMC Corp. v. Holliday*, 498 U.S. 52, 56–57, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). We infer preemption only when "[t]he scheme of federal regulation [is] so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or when an "[a]ct of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system [is] assumed to preclude enforcement of state laws on the same subject." *Rice*, 331 U.S. at 230, 67 S.Ct. at 1152. "In addition to express or implied pre-emption," when a federal statute is enacted pursuant to Congress's constitutionally superior enumerated powers, "a state law also is invalid to the extent that it 'actually conflicts with [that] ... federal statute,'" *Ouellette*, 479 U.S. at 491, 107 S.Ct. at 811 (quoting *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978)), or "'"stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"'" *id.* at 492, 107 S.Ct. at 811 (quoting *Hillsborough County v. Automated Med. Labs.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941))). Further, "[t]he defendant has the burden of proving a preemption defense." *Robertson v.*

1. Jones asserts that Congress's power to enact FERS as it relates to the Postal Service derives from U.S. Const. art. 1, § 8, cls. 7, 18. The State does not dispute his assertion. We assume, without holding, that the postal power provisions would give Congress the authority to enact FERS as it relates to postal employees.

2. We review for correctness a trial court's denial of a motion to dismiss based on its conclusion that a state statute is not preempted by federal law, giving no deference to the trial court. *See State v. Sterkel*, 933 P.2d 409, 411 (Utah Ct.App. 1997).

*Gem Ins. Co.,* 828 P.2d 496, 500 (Utah Ct. App.1992).

## I. Comprehensiveness of FERS

▆▆▆ Initially, we note the two conflicting interests. The constitutionally created "postal power, like all other enumerated powers of Congress, 'is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution.'" *United States Postal Serv. v. Brennan,* 574 F.2d 712, 714 (2d Cir.1978) (quoting *Gibbons v. Ogden,* 9 Wheat. 1, 196, 6 L.Ed. 23 (1824)), *cert. denied,* 439 U.S. 1115, 99 S.Ct. 1018, 59 L.Ed.2d 73 (1979). Pursuant to this postal power, Congress has provided a detailed and elaborate retirement system for its postal workers. *See* 5 U.S.C.A. §§ 8401–79 (West 1996 & Supp.1998). Thus, Congress has a strong interest in regulating this retirement system.

The State, however, obviously has broad authority under its police powers to prevent criminal conduct within its boundaries, including fraud. The State's interest in vigorously pursuing all fraudulent activity is apparent.

Jones contends, however, that, despite the State's interest in prohibiting fraudulent activities, FERS preempts the State from prosecuting him for any conduct related to his application for benefits. His argument is mainly premised on the idea that FERS is so comprehensive in scope that it is reasonable for us to infer that any state action in any way related to a claim for benefits under FERS is necessarily preempted by Congress's constitutionally superior interest.

▆▆▆ We disagree. The case law is clear that when a statute relates to a necessarily complex subject, even when that subject involves an area that Congress by constitutional mandate may exclusively control, there must be something more shown than the comprehensiveness of the plan itself to demonstrate preemptive intent as it relates to the

"peripheral concern[s]" of the legislation. *De Canas v. Bica,* 424 U.S. 351, 359–62, 96 S.Ct. 933, 938–39, 47 L.Ed.2d 43 (1976) (regarding state regulation of employment of illegal aliens). This is so because necessarily complex subjects almost always result in comprehensive plans. *See id.* It would therefore be inappropriate for any court to infer Congress's intent to totally preempt an entire field when, no matter what the preemptive intent of Congress, the resulting legislation would have been comprehensive. *See id.*

In this case, Congress created a comprehensive federal retirement system. However, because Congress's concern in establishing FERS was to create a retirement system for federal employees, " 'a detailed statutory scheme was both likely and appropriate, completely apart from any questions of preemptive intent.'" *Id.* at 359–60, 96 S.Ct. at 938 (quoting *New York State Dep't of Soc. Servs. v. Dublino,* 413 U.S. 405, 415, 93 S.Ct. 2507, 2514, 37 L.Ed.2d 688 (1973)).

> [D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of [a federal statute.]

*San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 243, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Thus, we cannot properly infer from the comprehensiveness of the plan alone that Congress intended to preempt "peripheral" matters related to FERS, such as state criminal actions arising out of fraudulent statements made in bringing FERS claims. Because Jones points to no other indicia of Congress's preemptive intent besides the comprehensiveness of the scheme, we must conclude that Jones has failed to meet his burden to show Congress's plain and manifest intent to preempt state laws punishing fraud arising out of applications for FERS benefits.[3]

---

3. Our conclusion as to this issue essentially answers Jones's further contention that, pursuant to *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), we cannot now create a

"non-statutory disciplinary action" in favor of the postal service against employees accused of fraud. Because we conclude that FERS did not create, nor did Congress intend to create, a disci-

■ Somewhat related to his comprehensiveness argument is Jones's claim that because the statute does not specify that a state may prosecute under state law, Congress intended that states not have the authority to do so. Citing § 8148 of the federal workers' compensation statute, 5 U.S.C.A. §§ 8101–8193 (West 1996 & Supp. 1998) and 18 U.S.C.A. § 1920 (West Supp. 1998), Jones argues that when Congress wants to preserve state remedies in comprehensive federal employee benefit plans it does so by explicit language. This argument is unpersuasive for two reasons. First, even in those cases in which Congress has created a federal remedy for fraud related to a benefits program, Jones cites no authority that by creating the federal remedy Congress clearly intended to preempt State remedies as to the same matter.[4] Second, the fact that Congress created remedies in other statutes only supports the State's argument that when Congress intended to act in the peripheral areas of punishment for criminal or otherwise wrongful conduct in benefits programs that it created, it explicitly did so—strengthening the State's contention that Congress did not intend to completely occupy the retirement benefits field to the exclusion of state legislation peripherally affecting it.

## II. Conflict of State Law with FERS

■ Jones's last argument is that the State "cannot impinge on the federal government's ability to dictate the terms on which employees seeking retirement will be subjected to criminal sanctions." The fact that the enforcement of state laws does slightly concern the congressional prerogative to exclusively govern the postal system is not sufficient to support a claim of preemption. *See, e.g., State ex rel. Danforth v. Reader's Digest Ass'n,* 527 S.W.2d 355, 362–63 (Mo. 1975) (holding state law prohibiting lotteries was not preempted by postal power when lottery was conducted by mail); *Commonwealth v. National Fed'n of the Blind,* 18 Pa.Cmwlth. 291, 335 A.2d 832, 838 (Pa. Commw.Ct.1975) (holding state law regulating solicitation of funds by charitable organization was not preempted by Postal Clause when solicitation conducted by mail), *aff'd,* 471 Pa. 529, 370 A.2d 732, 734–38 (1977). As the Supreme Court stated in *De Canas,* 424 U.S. at 355, 96 S.Ct. at 936, state law is not *"per se* pre-empted by ... constitutional power" simply because the "state enactment ... in [some] way deals" with the power in question. *Id.* Thus, the fact that this state statute touches an area in which Congress could have exclusive authority if it chose to exercise that authority, is not determinative. *See id.* Rather, we must look to the particular relationship between the state legislative scheme and the federal law as it exists now to determine whether the state law conflicts with the federal law.

As discussed above, FERS concerns establishing and administering a federal retirement system, without providing for discipline relating to filing false claims. The state law, on the other hand, regulates the communications of individuals within its boundaries without regard to the subject matter. The state law is general in scope and does not

---

plinary mechanism by which the postal service could pursue employees allegedly making false claims on their applications for disability retirement, this is not a case in which we are augmenting "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations." *Id.* at 388, 103 S.Ct. at 2417. *Bush* is therefore inapposite to the facts of this case.

**4.** In fact, § 8148 seems to assume that, even though Congress created § 1920, which criminalizes fraud in an application for federal workers' compensation, state criminal action based upon fraud would not have been precluded by § 1920. *See* 5 U.S.C.A. § 8148(a) (West 1996) ("Any individual convicted of a violation of section 1920 of title 18, or any other Federal or

State criminal statute relating to fraud in the application for a receipt of any benefit under this [statute] ... shall forfeit ... any entitlement to any benefit such individual would otherwise be entitled to under this [statute]...."). Contrary to Jones's characterization of it, § 8148 does not "permit" state criminal action based on fraud, but rather states that a person who is convicted of fraud, under either state or federal law, in his or her application for benefits, forfeits the benefits. Thus, § 8148 does not assume that the federal workers' compensation scheme preempts state action against a person who commits fraud. On the contrary, it assumes that the federal workers' compensation scheme does *not* preempt state action.

"attempt[ ] or attain[ ] any interference with the operation of the postal system." *National Fed'n of the Blind*, 335 A.2d at 838. Jones argues, however, that the enforcement of the fraud statute in these situations would somehow "impermissibly interfere with the operation of [FERS]," but Jones gives no examples of how the enforcement would actually interfere with the operation of the statute aside from his bare claim that it would upset the delicate balance between the employer and employee, *see* discussion *supra* note 3. Instead, he states that although he "has been declared a felon in the eyes of the state, the federal government [can] ignore the State's prosecution and approve the benefit if the application shows that in fact [he is] incapable [of performing] his duties." Thus, Jones concedes that the State's prosecution creates no actual conflict with the administration of FERS.

We, therefore, conclude that no conflict between the state law and FERS exists such that the enforcement of the state legislation would serve as an obstacle to the fulfillment of Congress's objective in enacting FERS.[5]

### CONCLUSION

We hold that, because FERS does not preempt the application of state fraud laws to applications for disability retirements under FERS, the trial court ruled correctly in denying Jones motion to dismiss. Accordingly, the trial court's order is affirmed.

WILKINS, Associate P.J., and ORME, J., concur.

---

5. Jones's arguments that he would not be guilty under the federal fraud statute, 18 U.S.C.A. § 1001 (West Supp.1998), are irrelevant to the question of preemption and are beyond the scope of the issues before us on his appeal.